# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 7, 2015 Session Heard at Greeneville[1]

## STATE OF TENNESSEE v. LARRY JERELLER ALSTON, KRIS THEOTIS YOUNG, AND JOSHUA EDWARD WEBB

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Knox County
No. 94647    Mary Beth Leibowitz, Judge**

---

**No. E2012-00431-SC-R11-CD – Filed May 5, 2015**

---

We granted review in this case to determine whether a jury instruction based on our decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), must be given when a defendant is charged with the offenses of kidnapping and aggravated burglary. The defendants threatened the victim with guns and took her purse as she was getting into her car outside of her residence. The defendants forced the victim to enter her home and followed her inside. They forced the victim to sit on her couch while they ransacked her home. Police apprehended the defendants as they attempted to flee. The defendants were indicted for aggravated robbery of the victim's purse, aggravated burglary of the victim's home, especially aggravated kidnapping, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. A jury convicted the defendants of all charges. The trial court set aside the guilty verdicts for especially aggravated kidnapping and aggravated burglary, finding that these convictions, in conjunction with the aggravated robbery convictions, violated principles of due process. The trial court also dismissed the firearms convictions. The Court of Criminal Appeals reversed and reinstated the verdicts. Upon appeal, we remanded the case to the Court of Criminal Appeals for consideration in light of our holding in *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013), which made our holding in *White* applicable to cases in the appellate process. On remand, the intermediate appellate court reached the same result. We hold that a kidnapping charge accompanied by an aggravated burglary charge does not, standing alone, warrant a *White* jury instruction. However, the trial court erred by not giving a

---

[1] We heard oral argument in this case on January 7, 2015, at the Niswonger Performing Arts Center in Greeneville, Tennessee, as a part of the Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

*White* jury instruction based on the especially aggravated kidnapping and aggravated robbery charges, but the error was harmless beyond a reasonable doubt.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined. JEFFREY S. BIVINS, J., filed a separate concurring opinion, in which HOLLY KIRBY, J., joined.

Mike Whalen, Knoxville, Tennessee, for appellant, Joshua Edward Webb; Sherif Guindi, Knoxville, Tennessee, for appellant, Larry Jereller Alston; and Robert R. Kurtz, Knoxville, Tennessee, for appellant, Kris Theotis Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and Jeffrey D. Zentner, Assistant Attorney General for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

On April 15, 2010, Larry Jereller Alston, Kris Theotis Young, and Joshua Edward Webb (collectively "the Defendants") accosted Carolyn Sue Maples ("the victim") outside of her Knoxville residence, taking her purse at gunpoint.  The Defendants then forced the victim to enter her house and followed her inside.  They pushed the victim onto a couch, told her not to move, and began ransacking the residence.  They emptied the contents of her pocketbook onto a table, and one of them demanded the personal identification number for her bank card.   Police arrived shortly thereafter and apprehended the Defendants as they attempted to flee.  The Defendants were indicted for aggravated robbery of the victim's purse,[2] aggravated burglary of the victim's home,[3]

---

[2] The aggravated robbery indictment provided that the Defendants "did unlawfully, knowingly, by putting [the victim] in fear, take from the person of [the victim], *a purse and its contents*." (emphasis added).

[3] The aggravated burglary indictment provided that the Defendants "did unlawfully and knowingly enter the habitation of [the victim] without her effective consent, not open to the public[ and] did commit [t]heft."

especially aggravated kidnapping, and possession of a firearm with the intent to go armed during the commission of a dangerous felony.

During a three-day trial in October 2011, eight witnesses testified for the State. Ashley Dawn Hill, a neighbor of the victim's, testified that on April 15, 2010, she was sitting on her front porch on Chicago Avenue when she saw three men walking down the middle of the street. As they approached the victim's house, the men unsuccessfully tried to stop a vehicle. Ms. Hill saw the men walk up to the victim as she was getting into her car and heard one of the men say, "Excuse me." Ms. Hill looked down momentarily and then heard the victim scream. When she looked up, she saw one of the men reach into the victim's car and grab her purse. The victim got out of her car and ran to her house, and the men followed her inside. At that point, Ms. Hill telephoned 911. The jury heard a recording of Ms. Hill's 911 call, which was consistent with her trial testimony.

The victim testified that on April 15, 2010, around 1:45 p.m., she left her home to get into her car, which was parked on the street, and saw three men, later identified as the Defendants, walking toward her. As she was getting into the car, one of the men asked if she knew a certain girl. The victim told him that she did not and turned to get into the car. She testified, "The next thing I know there were guns to my head." One of the men demanded that she give them her pocketbook and "get to the house." She recalled that two of the men had pistols and the other had a sawed off shotgun stuffed down his pants. As she put it, "the big one," later identified as Mr. Young, was the one who took her purse. After obtaining the purse, the men then "pushed [the victim] to go open the door to the house." The victim was frightened and shaking so badly that it was difficult to unlock the door, but once she did, the men pushed her inside.

Once inside the house, the men pushed the victim onto the living room couch and told her "not to move." One of the men said, "Don't let her out," and they then began ransacking her home. As the victim recalled, "They wanted my money; they wanted my jewelry; they wanted anything I had." The men dumped the contents of her pocketbook onto a table, taking $140 cash and her bank card. One of the Defendants demanded that she give him her "bank number." Confined to the couch, she complied with his demands. Several minutes later, as one of the Defendants was carrying a flat-screen television out the front door, he noticed that the police had arrived. Upon seeing the police, the man shouted, dropped the television, and ran toward the kitchen. As he ran away, the victim escaped out the front door.

Officer Amanda Bunch of the Knoxville Police Department ("KPD") was the first officer to arrive at the scene. She testified that on April 15, 2010, around 1:40 p.m., she responded to a call from Chicago Avenue indicating that "three males [had] force[d] a lady back into her house at gunpoint." When Officer Bunch arrived, she took position behind a tree in front of the victim's house and waited for backup. From her location, she could see movement inside the house. Around the same time as her backup arrived, the

front door of the house opened and a black male carrying a television began to exit. Upon noticing the police, the man dropped the television and ran back into the house. At that point, two officers went to the back of the residence, while Officer Bunch moved closer to the front, taking a position behind a Jeep. She could still see movement in the house and began shouting, "[G]et on the ground; get on the ground." At which point, the victim approached the door, saying, "[I]t's me; it's me." Officer Bunch motioned for the victim to come out of the house, and the victim ran out.

Also responding to the scene were KPD Officers Timothy Riddle, Jonathan Stevens, Dean Ray, and Russell Whitfield, who all testified at trial. As these officers explained, Mr. Alston was initially taken into custody at the back of the house, while Mr. Young and Mr. Webb remained inside. They were apprehended when Officer Ray released a police dog inside the house, driving the two of them out. Police searched Mr. Alston and recovered $110 in cash and the victim's bank card. On Mr. Webb, police found two five-dollar bills, a lighter, his wallet, a gold-type of bracelet, and a prescription pill bottle bearing the victim's name. Mr. Young had a black cell phone, his wallet, and $25 in cash. Officer Whitfield of the KPD Forensic Unit took photographs and collected evidence at the scene. The photographs, several of which depicted the victim's house in disarray, were entered into evidence. Among the items collected from the house and made exhibits at trial were a Ruger pistol, a High Point nine millimeter pistol, and a Stevens .20 gauge pump-action, sawed-off shotgun.

At the conclusion of the State's proof, the Defendants moved to dismiss the charges of especially aggravated kidnapping and aggravated burglary based upon due process principles articulated in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and subsequent case law. The trial court reserved ruling on the issue until after the jury rendered its verdicts. The Defendants presented no proof.

The jury convicted the Defendants of especially aggravated kidnapping, aggravated burglary, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. The trial court set aside the verdicts for especially aggravated kidnapping and aggravated burglary, finding that these convictions, in conjunction with the aggravated robbery convictions, violated principles of due process. The trial court also set aside the verdicts for possession of a firearm with the intent to go armed during the commission of a dangerous felony. The trial court reasoned that the firearms convictions could not stand in light of the dismissal of the especially aggravated kidnapping and aggravated burglary convictions, which were the predicate dangerous felonies for the firearms offenses.

The State appealed, and the Court of Criminal Appeals reversed the trial court's judgments, finding that separate convictions for each of the offenses did not violate principles of due process or double jeopardy.[4]   *State v. Alston*, No. E2012-00431-CCA-R3-CD, 2013 WL 2382589, at *15 (Tenn. Crim. App. May 30, 2013).  On appeal to this Court, we remanded the case to the Court of Criminal Appeals for consideration in light of our holding in *Cecil*, 409 S.W.3d 599, which applied the requirement of a jury instruction pursuant to *White*, 362 S.W.3d 559, to cases already in the appellate process on the date *White* was issued.[5]   On remand, the Court of Criminal Appeals reached the same result.  *State v. Alston*, No. E2012-00431-CCA-R3-CD, 2014 WL 585859, at *6 (Tenn. Crim. App. Feb. 13, 2014).  We granted the Defendants' application for permission to appeal to determine whether a jury instruction pursuant to *White* must be given when a defendant is accused of a kidnapping accompanied by an aggravated burglary.  In addition, we address whether the erroneous failure to instruct the jury in this case, pursuant to *White*, was harmless beyond a reasonable doubt.

## II. Analysis

### A.

To address the issues in this appeal, it is helpful to review the development of the law giving rise to the jury instruction required by *White*, 362 S.W.3d at 578.  In 1991, in *Anthony*, this Court recognized that a period of confinement, technically meeting the definition of kidnapping, often accompanies crimes such as robbery, rape, and assault. 817 S.W.2d at 305.  Kidnapping, which is defined in terms of false imprisonment, is the unlawful removal or confinement of another so as to interfere substantially with the other's liberty.[6]   Tenn. Code Ann. § 39-13-302(a) (1990).  As this Court noted in

---

[4] As to the firearms offenses, the Court of Criminal Appeals found that, while the trial court erred in dismissing the convictions on the grounds stated, the failure of the indictment to specify which predicate dangerous felony applied to the firearms offenses rendered those indictments fatally defective. Accordingly, the Court of Criminal Appeals affirmed the trial court's dismissal of the charges of possession of a firearm with the intent to go armed during the commission of a dangerous felony.  *Alston*, 2013 WL 2382589, at *15.  As this holding has not been challenged in this appeal, we do not disturb the Court of Criminal Appeals' dismissal of these charges.

[5] This case was tried October 24-26, 2011, and the State filed its notice of appeal on February 17, 2012.  We issued our decision in *White* on March 9, 2012.

[6] Kidnapping is proscribed at three levels under our statutory scheme, with each level based upon the definition of false imprisonment.  Kidnapping, a Class C felony, is a false imprisonment "[u]nder circumstances exposing the other person to substantial risk of bodily injury."  Tenn. Code Ann. § 39-13-303 (2008).  Aggravated kidnapping, a Class B felony, is a false imprisonment committed:

(continued …)

*Anthony*, "the offense of kidnapping defined in these statutes at times could literally overrun several other crimes." *Anthony*, 817 S.W.2d at 303 (quoting *People v. Levy*, 204 N.E.2d 842, 844 (N.Y. 1965)). The Court identified robbery, rape, and assault as potential offenses that, when accompanied by a kidnapping charge, could give rise to due process concerns. *Id.* (quoting *Levy*, 204 N.E.2d at 844) ("It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place."). Based on these concerns, the Court concluded that a separate kidnapping conviction cannot be supported when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *See id.* at 306, 307 (emphasizing that "[t]he test is not whether the detention was an 'integral part or essential element' of the [accompanying offense], but whether it was 'essentially incidental' to that offense").

Later, in *State v. Dixon*, this Court modified the "essentially incidental" analysis by clarifying that "any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." 957 S.W.2d 532, 535 (Tenn. 1997). Under *Dixon*, the inquiry became (1) whether the movement or confinement of the victim was beyond that necessary to consummate the accompanying crime; and (2) whether the additional movement or confinement prevented the victim from summoning help, lessened the defendant's risk of detection, or created a significant

---

(…continued)

    (1) To facilitate the commission of any felony or flight thereafter;
    (2) To interfere with the performance of any governmental or political function;
    (3) With the intent to inflict serious bodily injury on or to terrorize the victim or another;
    (4) Where the victim suffers bodily injury; or
    (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

Tenn. Code Ann. § 39-13-304(a)-(b)(1) (1990). Especially aggravated kidnapping, a Class A felony, is a false imprisonment:

    (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;
    (2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement;
    (3) Committed to hold the victim for ransom or reward, or as a shield or hostage; or
    (4) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-305(a)-(b)(1) (1990).

danger or increased the victim's risk of harm.[7] *Id.*; *see also State v. Richardson*, 251 S.W.3d 438, 442-43 (Tenn. 2008) (recognizing that the *Dixon* test replaced the *Anthony* "essentially incidental" analysis). Under this framework, the jury's role was limited to determining whether the State had proven the elements of kidnapping and the accompanying felony beyond a reasonable doubt. *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001). The "essentially incidental" analysis was not considered as one of these elements but was a question to be determined exclusively by the trial court and reviewed de novo on appeal. *Id.* ("The determination of whether due process has been violated is purely a question of law.").

In 2012, in *White*, we found that the *Anthony/Dixon* framework had proven unworkable, and we expressly overruled *Anthony* and the entire line of cases that included a separate due process analysis on appellate review. *White*, 362 S.W.3d at 578. We determined instead that the question of whether a kidnapping was "essentially incidental" to an accompanying offense is a question of fact for a properly instructed jury. *Id.* at 577 (finding that the question of "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law"). This finding by a jury, along with a reviewing court's "assess[ment] [of] the sufficiency of the convicting evidence," is sufficient to protect the defendant's due process rights. *Id.* at 577-78.

We identified the proper inquiry for the jury as "whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." *Id.* at 578. To facilitate this determination, we provided a jury instruction,[8] which was subsequently adopted by the

---

[7] The distance of the victim's movement and the duration and place of the victim's confinement were factors to be considered when determining if the movement or confinement was beyond that necessary to consummate the accompanying crime, and the second prong of the analysis was to be addressed only if the threshold inquiry in the first prong was satisfied. *Dixon*, 957 S.W.2d at 535.

[8] In *White*, we set forth the following instruction:

To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

- the nature and duration of the victim's removal or confinement by the defendant;
- whether the removal or confinement occurred during the commission of the separate offense;

(continued …)

Tennessee Pattern Jury Instruction Committee. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.01-.03, 8.05. This instruction did not create a new standard for kidnapping, but "merely provid[ed a] definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Cecil*, 409 S.W.3d at 607 (quoting *White*, 362 S.W.3d at 578) (internal quotation mark omitted). Later, in *Cecil*, we held that the absence of this instruction, when warranted, results in instructional error that must be subjected to constitutional harmless error review. 409 S.W.3d at 610. We have also identified certain crimes—such as robbery, rape, and assault—that, when charged along with kidnapping, would warrant this instruction. *See Anthony*, 817 S.W.2d at 303 (quoting *Levy*, 204 N.E.2d at 844) ("[T]he offense of kidnapping . . . could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault."). However, we have never considered whether the *White* instruction applies when the accompanying charge is aggravated burglary.

## B.

We first turn to the question of whether to extend the requirement of a *White* jury instruction to cases involving a kidnapping charge accompanied by an aggravated burglary charge. The Defendants assert that they are entitled to a *White* instruction on both the aggravated robbery and aggravated burglary charges, noting that this Court has never limited this requirement to only cases of robbery, rape, and assault. Conversely, the State argues that a *White* instruction is unnecessary for cases involving a kidnapping accompanied only by aggravated burglary, as it is not among the type of offenses to the person, like robbery, rape, and assault, which often inherently involve some period of confinement.

This question presents an issue of first impression and requires interpretation of a criminal statute. When interpreting statutes, our primary function is to carry out

_____

(…continued)

> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;
> • whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
> • whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
> • whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*White*, 362 S.W.3d at 580-81.

legislative intent without broadening the statute beyond its intended scope. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013) (citing *State v. Strode*, 232 S.W.3d 1, 9 (Tenn. 2007)). We begin by focusing on the words of the statute, presuming that each word has its own meaning and purpose. *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)). "If the statutory language is clear and unambiguous, we apply the statute's plain language in its normal and accepted use." *Keen*, 398 S.W.3d at 610. Only when statutory language is ambiguous, do we look any further. *Id.* In addressing an issue of first impression, we often review the decisions of other states and other authorities to assist our analysis. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013) (citing *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005)).

In Tennessee, aggravated burglary is a property crime that involves either (1) the unauthorized entry into or the unlawful concealment within a habitation with the intent to commit a felony, theft, or assault; or (2) the unauthorized entry into a habitation and the subsequent commission of or the attempt to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402(a)(1), -402(a)(2), -403(a) (2006).[9] Unlike the offenses of robbery, rape, and assault, the offense of aggravated burglary does not inherently involve the confinement of a victim. Tenn. Code Ann. § 39-14-403; *see also State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999) ("Burglary is an offense against the security interest in possession of property. . . ."); *State ex rel. Wooten v. Bomar*, 352 S.W.2d 5, 7 (Tenn. 1961) ("At common law, burglary was regarded as an offense against the habitation."); *cf.* Tenn. Code Ann. § 39-13-401(a) ("Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."); Tenn. Code Ann. § 39-13-302(a) ("A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.").

---

[9] Tennessee Code Annotated section 39-14-402 provides, in pertinent part:

> (a) A person commits burglary who, without the effective consent of the property owner:
> > (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
> > (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
> > (3) Enters a building and commits or attempts to commit a felony, theft or assault; or
> > (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402. Tennessee Code Annotated section 39-14-403(a) provides that "[a]ggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402."

Noting the differences between the offense of aggravated burglary and those of robbery and rape, in 2011, the Court of Criminal Appeals did not extend the due process requirements of *Anthony* to a case involving a kidnapping accompanied by an aggravated burglary. *State v. Shelby*, No. M2006-02582-CCA-R3-CD, 2011 WL 795834, at *4 (Tenn. Crim. App. Mar. 8, 2011) ("While every robbery or rape involves some detention of the victim, not every burglary involves kidnapping."); *see also State v. Monroe*, 827 N.E.2d 285, 299 (Ohio 2005) (refusing to merge aggravated burglary and kidnapping, as the two offenses "are not allied offenses of similar import"); *People v. Chronis*, 619 N.Y.S.2d 156, 157 (N.Y. App. Div. 1994) (finding that "[an] abduction was discrete from [a] burglary as the latter crime had been fully completed when the defendant forced the victim at knifepoint into a car"). *But see State v. Davis*, No. M2011-02075-CCA-R3-CD, 2012 WL 5947439, at *6 (Tenn. Crim. App. Nov. 16, 2012) (finding, in a case involving charges of especially aggravated kidnapping, aggravated burglary, and aggravated robbery, that the proof was subject to different interpretations as to whether the defendant's confinement or removal of the victims was essentially incidental to the accompanying felonies); *State v. Ozevin*, No. CA2012-06-044, 2013 WL 1397272, at *3 (Ohio Ct. App. Apr. 8, 2013) (merging the offenses of kidnapping and aggravated burglary in a state where aggravated burglary is an offense requiring an occupied structure); *Braggs v. State*, 789 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2001) (finding that kidnapping was incidental to the offense of burglary with an assault).

Moreover, Tennessee courts have declined to extend the due process requirements of *Anthony* in a number of other contexts. *See, e.g.*, *Ralph*, 6 S.W.3d at 254-55 (declining to extend *Anthony* to separate convictions for automobile burglary and theft); *State v. Perrow*, No. M2003-00319-CCA-R3-CD, 2004 WL 193059, at *10-11 (Tenn. Crim. App. Jan. 28, 2004) (declining to extend *Anthony* to separate convictions of aggravated burglary, aggravated rape, and aggravated assault); *State v. Waters*, No. M2001-02682-CCA-R3-CD, 2003 WL 213777, at *14 (Tenn. Crim. App. Jan. 30, 2003) (declining to extend *Anthony* to separate offenses for aggravated burglary, aggravated rape, and aggravated robbery"); *State v. Cowan*, 46 S.W.3d 227, 234-35 (Tenn. Crim. App. 2000) (declining to extend *Anthony* to separate convictions for attempted first degree murder, aggravated burglary, and attempted especially aggravated robbery).

We hold that a kidnapping charge accompanied by an aggravated burglary charge, standing alone, does not warrant a *White* instruction. In *Anthony*, the rationale underlying this Court's due process concern was that, inherent to certain offenses, such as robbery, rape, and assault, there exists a period of confinement of a victim that might also satisfy the elements of kidnapping. *White*, 362 S.W.3d at 578; *Anthony*, 817 S.W.2d at 305. This same period of confinement is not inherent to the offense of aggravated burglary, which is only an offense against property. As such, the concerns that are implicated when kidnapping is charged along with the offenses of robbery, rape, and assault, which are crimes against persons, are not implicated when a defendant is charged with kidnapping along with the offense of aggravated burglary. There is no danger that the

kidnapping statute "could literally overrun" the crime of aggravated burglary, *see Anthony*, 817 S.W.2d at 303, and we decline to extend the instructional requirements of *White* when kidnapping and aggravated burglary are charged.[10]

## C.

We next turn to the question of whether it was error for the trial court not to instruct the jury pursuant to the requirements of *White* with regard to the kidnapping charge as accompanied by the aggravated robbery charge, and if so, whether that error was harmless beyond a reasonable doubt. In *Cecil*, we held that the absence of the *White* instruction, when warranted, results in constitutional error.[11] *Cecil*, 409 S.W.3d at 610 (citing *State v. Faulkner*, 154 S.W.3d 48, 60 (Tenn. 2005)) (noting that the failure to properly instruct the jury pursuant to *White* is a "failure to instruct the jury on a material element of an offense," resulting in constitutional error). The requirement of a *White* jury instruction applies to cases that were already in the appellate pipeline at the time *White* was issued. *Cecil*, 409 S.W.3d at 608.

In addition to the aggravated burglary and firearms charges, the Defendants were charged with especially aggravated kidnapping and aggravated robbery, a pairing of crimes clearly warranting a *White* instruction, as these were the offenses at issue in *White*. *White*, 362 S.W.3d at 564. However, the trial court did not instruct the jury pursuant to *White*,[12] and this qualified as constitutional error. *See Cecil*, 409 S.W.3d at 610 (citing *Faulkner*, 154 S.W.3d at 60). Accordingly, we must determine whether this error was harmless beyond a reasonable doubt. *Cecil*, 409 S.W.3d at 610 (citing *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008)) ("The existence of a non-structural constitutional

---

[10] We do not decide in this case whether a *White* instruction is required when a kidnapping charge is accompanied by a charge of especially aggravated burglary. Because this case does not require determination of that question, we leave the issue for another day.

[11] Although we noted in *White* that a sufficiency of evidence review would serve as the due process safeguard on appeal, "[o]nly when the jury is properly instructed can appellate review of the sufficiency of the convicting evidence satisfy [this] safeguard." *Cecil*, 409 S.W.3d at 609.

[12] The Defendants requested the following special jury instruction, which the trial court denied:

> If you find that the defendants moved [the victim] from the driveway to the interior of her home, you must then first determine if that movement was necessary to accomplish the robbery in this case. If you find that the movement of [the victim] was necessary to accomplish the robbery in this case, then you should find the defendant not guilty of the charge of especially aggravated kidnapping and all its lesser included offenses.

We note the similarity between this requested instruction and the jury instruction articulated in *White*.

-11-

error requires reversal unless the State demonstrates beyond a reasonable doubt that the error is harmless.").

An instructional error is harmless whenever "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Rodriguez*, 254 S.W.3d at 371 (quoting *State v. Allen*, 69 S.W.3d 181, 190 (Tenn. 2002)) (internal quotation marks omitted). "[T]he touchstone of this inquiry is whether a rational trier of fact could interpret the proof at trial in different ways." *Cecil*, 409 S.W.3d at 610 (citing *White*, 362 S.W.3d at 579).

In *White*, we were unable to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error. *White*, 362 S.W.3d at 580 n.20. The proof in *White* established that the defendant, brandishing a gun, attacked a woman from behind in the women's restroom, forcing her "down on all fours" and kicking her. *Id.* at 579. The defendant then took the victim's keys in an attempt to open the restaurant's safe and ordered her to remain in the restroom. *Id.* He then returned, and after determining that she had an additional set of keys, forced her to the safe at gunpoint. *Id.* The defendant was convicted of burglary, aggravated robbery, and especially aggravated kidnapping. *Id.* at 562. Based on these facts, we determined that "th[e] proof could be interpreted in different ways" and remanded the case for consideration by a properly instructed jury. *Id.* at 579.

Similarly, in *Cecil*, we were unable to find beyond a reasonable doubt that the failure to properly instruct the jury was harmless. *Cecil*, 409 S.W.3d at 612. *Cecil* involved a physical altercation between two former lovers, wherein the defendant was convicted of assault and false imprisonment. *Id.* at 601, 603. The two had exchanged multiple blows over the course of one to two hours, with the victim claiming that she tried to leave several times during the altercation. *Id.* at 601-02. Based on this evidence, it was unclear whether the confinement of the victim was substantial enough to support a separate conviction for false imprisonment, and we determined that the proof could be interpreted in different ways. *Id.* at 612.

Conversely, the Court of Criminal Appeals has, in a number of cases, deemed the omission of a *White* instruction harmless beyond a reasonable doubt. For instance, in *State v. Keller*, a case wherein the defendant and his accomplices kicked in the door of a house and threatened the victims with deadly force, before removing and confining the victims with the intention of using them as hostages in an attempt to rob a third party, the intermediate appellate court found that the absence of a *White* instruction was harmless beyond a reasonable doubt. *Keller*, No. W2012-00825-CCA-R3-CD, 2013 WL 3329032, at *4 (Tenn. Crim. App. June 27, 2013). The court noted that "the movement and confinement of the victims was not done for purposes of accomplishing assaults upon them," and thus, "the victims' kidnappings were separate from—not 'incidental' to—the commission of the aggravated assaults." *Id.* at *4-5. Further, in *State v. Hulse*, the Court

of Criminal Appeals determined that the absence of a *White* instruction was harmless beyond a reasonable doubt where the defendant, after raping the victim, chased her with a boxcutter, grabbed her by the ankles, pulled her down a sidewalk, and prevented her from summoning help. *Hulse*, No. E2011-01292-CCA-R3-CD, 2013 WL 1136528, at *14 (Tenn. Crim. App. Mar. 19, 2013). The court found that this conduct was not inherent to the offense of rape, a crime that had already been completed, and thus, it went "well beyond that necessary to consummate the [accompanying offense]." *Id.*

As noted by the Court of Criminal Appeals in this case, the common factor in *Keller* and *Hulse* was that the accompanying felony was completed before the removal or confinement constituting the kidnapping. *Alston*, 2014 WL 585859, at *3. Conversely, in *White* and *Cecil*, it was difficult, based on the proof, to clearly pinpoint the completion of the accompanying felonies. Thus, it was not easily established in *White* or *Cecil* whether the conduct constituting the kidnappings was beyond that necessary to consummate the other offenses. *Cecil*, 409 S.W.3d at 611; *White*, 362 S.W.3d at 580.

In this case, the proof at trial established that the Defendants accosted the victim as she was getting into her car outside of her residence. The Defendants pointed guns at the victim and demanded her purse, which she immediately relinquished. After obtaining her purse, the Defendants then ordered the victim into her own house at gunpoint, pushed her onto a couch, and told her not to move. According to the victim, one of the Defendants said, "Don't let her out," and they began ransacking her house. The criminal episode ended when the police arrived.

The Court of Criminal Appeals found that this evidence established beyond a reasonable doubt that the removal of the victim from her driveway and confinement within her house were beyond that necessary to accomplish the aggravated robbery as charged in the indictment, and thus, the failure to give a *White* instruction was harmless beyond a reasonable doubt. *Alston*, 2014 WL 585859, at *6. The Defendants argue, however, that the aggravated robbery was not completed upon the taking of the victim's purse, but rather, the taking of the purse was part of one ongoing robbery. The Defendants assert, therefore, that the proof as to whether the kidnapping was incidental to the aggravated robbery could be interpreted in different ways by a fact finder and was not harmless beyond a reasonable doubt. We disagree.

The Defendants completed the offense of aggravated robbery, as charged in the indictment and established by the proof at trial, before proceeding to commit the especially aggravated kidnapping by ordering the victim into her house and confining her to the couch. Notably, unlike the aggravated burglary, especially aggravated kidnapping, and firearms indictments, the aggravated robbery indictment specified that it related only to the "tak[ing] . . . of [the victim's] . . . purse and its contents." Once the Defendants had taken the victim's purse, the offense of aggravated robbery was complete. The Defendants' subsequent actions were in addition to the initial robbery, and though their

-13-

conduct may have supported an additional robbery charge, the jury could only consider the charges the State chose to pursue. *See State v. Terrell*, No. 02C01-9701-CC-00001, 1997 WL 467038, at *2 (Tenn. Crim. App. Aug. 15, 1997) (holding that "[a] prosecutor may choose, consistent with *Anthony*, to charge only kidnapping when confronted by factual scenarios contemplated . . . in *Anthony*"); *see also State v. Gaskell*, No. 285, 1992 WL 73189 (Tenn. Crim. App. Apr. 13, 1992). Likewise, on appellate review, we do not consider hypothetical offenses that were not charged and not considered by the jury.

We hold that by taking the victim's purse, the Defendants fully completed the aggravated robbery, as charged in the indictment and established by the proof at trial, before beginning the commission of the especially aggravated kidnapping. As such, the conduct constituting the kidnapping was "beyond that necessary to consummate [the accompanying] offense." *Keller*, 2013 WL 3329032, at *4; *see also Hulse*, 2013 WL 1136528, at *14. Given these facts, it is clear that a rational trier of fact could not interpret this proof in different ways, *see Cecil*, 409 S.W.3d at 610 (citing *White*, 362 S.W.3d at 579), and thus, even if a *White* instruction had been given, the result would have been the same. Accordingly, we hold that the absence of a *White* instruction was harmless beyond a reasonable doubt.

## Conclusion

We hold that a kidnapping charge accompanied by an aggravated burglary charge does not, standing alone, warrant a jury instruction pursuant to *White*. However, because of the especially aggravated kidnapping and aggravated robbery charges, the absence of a *White* instruction in this case amounted to error, but we hold this error was harmless beyond a reasonable doubt. Accordingly, we affirm the judgment of the Court of Criminal Appeals, reinstate the Defendants' convictions for especially aggravated kidnapping and aggravated burglary, and remand the case to the trial court for sentencing. It appearing from the record that the Defendants are indigent, the costs of this appeal are assessed to the State of Tennessee.

_____
SHARON G. LEE, CHIEF JUSTICE