IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 25, 2018 Session

## LARRY JERELLER ALSTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 107977      Scott Green, Judge**

_____

### No. E2017-02528-CCA-R3-PC

_____

The petitioner, Larry Jereller Alston, appeals the denial of his petition for post-conviction relief, which petition challenged his Knox County Criminal Court jury convictions of especially aggravated kidnapping, aggravated burglary, and aggravated robbery. In this appeal, the petitioner contends that the "all or nothing" plea offer extended by the State to the petitioner and his co-defendants was illegal, that the prosecutor's subsequent withdrawal of that offer based upon personal animus toward his co-defendant's counsel entitles him to post-conviction relief, and that the behavior of his co-defendant's counsel during plea negotiations equates to a deprivation of the effective assistance of counsel sufficient to warrant post-conviction relief. Because the petitioner has failed to establish that he is entitled to post-conviction relief, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald Gulley, Knoxville, Tennessee, for the appellant, Larry Jereller Alston.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Charme P. Allen, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Knox County Criminal Court jury convicted the petitioner and his co-defendants, Kris Theotis Young and Joshua Edward Webb, of especially aggravated kidnapping, aggravated burglary, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. Our supreme court summarized the facts of the case:

Ashley Dawn Hill, a neighbor of the victim's, testified that on April 15, 2010, she was sitting on her front porch on Chicago Avenue when she saw three men walking down the middle of the street. As they approached the victim's house, the men unsuccessfully tried to stop a vehicle. Ms. Hill saw the men walk up to the victim as she was getting into her car and heard one of the men say, "Excuse me." Ms. Hill looked down momentarily and then heard the victim scream. When she looked up, she saw one of the men reach into the victim's car and grab her purse. The victim got out of her car and ran to her house, and the men followed her inside. At that point, Ms. Hill telephoned 911. The jury heard a recording of Ms. Hill's 911 call, which was consistent with her trial testimony.

The victim testified that on April 15, 2010, around 1:45 p.m., she left her home to get into her car, which was parked on the street, and saw three men, later identified as the [the petitioner and his co-defendants], walking toward her. As she was getting into the car, one of the men asked if she knew a certain girl. The victim told him that she did not and turned to get into the car. She testified, "The next thing I know there were guns to my head." One of the men demanded that she give them her pocketbook and "get to the house." She recalled that two of the men had pistols and the other had a sawed[-]off shotgun stuffed down his pants. As she put it, "the big one," later identified as Mr. Young, was the one who took her purse. After obtaining the purse, the men then "pushed [the victim] to go open the door to the house." The victim was frightened and shaking so badly that it was difficult to unlock the door, but once she did, the men pushed her inside.

Once inside the house, the men pushed the victim onto the living room couch and told her "not to move." One of the men said, "Don't let her out," and they then began ransacking her home. As the victim recalled, "They wanted my money; they wanted my jewelry; they wanted anything I had." The men dumped the contents of her pocketbook onto a table, taking $140 cash and her bank card. One of the [men] demanded that she give him her "bank number." Confined to

-2-

the couch, she complied with his demands. Several minutes later, as one of the [men] was carrying a flat-screen television out the front door, he noticed that the police had arrived. Upon seeing the police, the man shouted, dropped the television, and ran toward the kitchen. As he ran away, the victim escaped out the front door.

. . . .

. . . . Mr. Alston was initially taken into custody at the back of the house, while Mr. Young and Mr. Webb remained inside. . . . Police searched Mr. Alston and recovered $110 in cash and the victim's bank card. On Mr. Webb, police found two five-dollar bills, a lighter, his wallet, a gold-type of bracelet, and a prescription pill bottle bearing the victim's name. Mr. Young had a black cell phone, his wallet, and $25 in cash.

*State v. Alston*, 465 S.W.3d 555, 558-59 (Tenn. 2015).

Following the jury's verdicts of guilty, the trial court set aside the verdicts of especially aggravated kidnapping, aggravated burglary, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. *Id.* at 559. The trial court concluded that the convictions of especially aggravated kidnapping and aggravated burglary violated principles of due process and then "reasoned that the firearms convictions could not stand in light of the dismissal of the especially aggravated kidnapping and aggravated burglary convictions, which were the predicate dangerous felonies for the firearms offenses." *Id.* at 559-60.

On direct appeal, this court "reversed the trial court's setting aside the jury verdicts of especially aggravated kidnapping and aggravated burglary," concluding that our supreme court's ruling in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), applied to the case because it was in the appellate pipeline when *White* was filed and that "the trial court erred by failing to provide the jury instruction promulgated by *White*" as to the petitioner's convictions of aggravated robbery and especially aggravated kidnapping. We determined, however, that the erroneous failure to provide the *White* instruction was harmless beyond a reasonable doubt. We also concluded that the *White* instruction was not required with regard to the conviction of aggravated burglary. We affirmed the trial court's setting aside the firearms conviction on grounds other than those relied on by the trial court. *State v. Larry Jereller Alston, Kris Theotis Young, and Joshua Edward Webb*,

-3-

No. E2012-00431-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 13, 2014), *aff'd*, 465 S.W.3d 555 (Tenn. 2015).

Upon the initial application for permission to appeal, our supreme court remanded the case to this court for reconsideration in light of the supreme court's holding in *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013). Following our reconsideration of the case on remand, this court again reached the same result. The supreme court then granted permission to appeal "to determine whether a jury instruction pursuant to *White* must be given when a defendant is accused of a kidnapping accompanied by an aggravated burglary" and to "address whether the erroneous failure to instruct the jury in this case, pursuant to *White*, was harmless beyond a reasonable doubt." *Alston*, 465 S.W.3d at 560.

The supreme court affirmed this court's conclusion that "a kidnapping charge accompanied by an aggravated burglary charge, standing alone, does not warrant a *White* instruction." *Id.* at 564. The high court also affirmed our conclusion "that the absence of a *White* instruction was harmless beyond a reasonable doubt" as to the other convictions. *Id.* at 567. The supreme court reinstated the convictions of especially aggravated kidnapping and aggravated burglary and remanded the case for sentencing. *Id.*[1]

On May 2, 2016, the petitioner filed a timely petition for post-conviction relief, alleging that his convictions violated double jeopardy principles and that he was deprived of the effective assistance of counsel when his counsel failed to convey an "all or nothing" plea offer from the State and when counsel for Mr. Webb behaved in a manner that caused the State to prematurely withdraw the offer. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, in which petition he claimed that his conviction of especially aggravated kidnapping violated principles of due process; that his counsel performed deficiently by failing to challenge the sufficiency of the evidence supporting his conviction of especially aggravated kidnapping, the legal sufficiency of the indictment, and the propriety of the jury instructions and by failing to petition the United States Supreme Court for certiorari; that his convictions violated double jeopardy principles; that his counsel performed deficiently by failing to communicate a plea offer from the State; and that Mr. Webb's counsel deprived him of the effective assistance of counsel by behaving in a manner that caused the State to prematurely withdraw the plea offer. In a second amended petition, the petitioner alleged that the "all or nothing" plea offer from the State violated due process principles.

---

[1] Neither party appealed this court's holding affirming the dismissal of the firearms conviction.

At the June 2017 evidentiary hearing, the petitioner testified that he did not recall his counsel's conveying to him any plea offers prior to trial. He said that, following the sentencing hearing, trial counsel told him that the State had made an offer that was quickly withdrawn after Assistant District Attorney General Kevin Allen and Alex Brown, Mr. Webb's attorney, "had gotten into some kind of fusion." The petitioner recalled that counsel told him the offer included "an eight (8), ten (10), and a twelve (12)" and that he assumed he was "the eight," but he admitted that he "had no sure way to know." The petitioner said that he would have accepted any of the offered sentences.

Trial counsel, who was appointed to represent the petitioner once the case reached the criminal court, testified that at some point, General Allen made an offer to the petitioner and his co-defendants that included the eight-, 10-, and 12-year sentences based upon their relative culpability as described by the victim. The State's offer required that all the men accept the agreement. Counsel said that he thought that he had conveyed the offer to the petitioner shortly after it was made, but he had no specific recollection of having done so. He said that the offer "came off the table so quickly" that it was possible that it had been withdrawn before counsel could convey it to the petitioner. Trial counsel recalled that Mr. Brown, who represented Mr. Webb, was the first person to tell him that the offer had been withdrawn. According to trial counsel, Mr. Brown said that he was not satisfied with the offer because he believed Mr. Webb, who had been offered the 10-year sentence, to be the least culpable of the three perpetrators. Mr. Brown told counsel that when he conveyed his dissatisfaction to General Allen, General Allen indicated that he could not give Mr. Webb "a better deal" than Mr. Young and the petitioner because Mr. Webb is white and the others are black. Mr. Brown then accused General Allen of racism, and, according to counsel, General Allen responded with an obscenity before hanging up the telephone. General Allen eventually informed trial counsel that the offer had been rescinded.

Mr. Brown testified that when the case was at the general sessions court level, the State made a plea offer to his client that included a six-year sentence. The offer, however, was conditioned upon the petitioner and Mr. Young's also accepting a plea offer from the State. Mr. Brown said that the petitioner and Mr. Young would not accept the State's offer because they "were trying to raise the argument that the [victim] was a drug dealer." At that point, the State withdrew the offer based upon the rejections by the petitioner and Mr. Young. Once the case reached the criminal court, the State made another plea offer that "put [Mr. Webb] in the middle of the thing," which Mr. Brown found unsatisfactory given Mr. Webb's willingness to cooperate with the State. Mr. Brown said that he continued "trying to pester" General Allen to make Mr. Webb a better offer. Mr. Brown testified that General Allen "took the position" that "he wasn't going to let the white guy have a better deal than the black guys, 'cause he didn't want it to look like he was being a racist and favor him."

Mr. Brown testified that at the same time he was attempting to negotiate a better offer with General Allen, counsel for Mr. Young and the petitioner were "going to bring in a witness who was going to prove that the [victim] was a drug dealer."

General Allen made a statement to the court about the events that preceded his withdrawing the plea offer in this case. However, General Allen made his statement in his role as the representative of the State in this post-conviction action. He was not called as a witness by either party, was not placed under oath, and was not subject to cross-examination. "While it is true that a lawyer is an officer of the court, his statement of extra-judicial facts made in the course of argument, when not under oath as a witness and not subject to cross-examination, proves nothing." *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn. Crim. App. 1974). Because "statements made by counsel during the course of a hearing, trial, or argument" are not evidence, *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988), we do not include it in our recitation of the evidence adduced at the evidentiary hearing. *See Davis v. State*, 673 S.W.2d 171, 172 (Tenn. Crim. App. 1984) (stating that the assistant district attorney's assertions during a post-conviction hearing did "not constitute proof" "to refute the petitioner's contentions").

In the written order denying post-conviction relief, the post-conviction court found that, because the evidence established that "counsel for a co-defendant was engaging in further attempts to renegotiate the agreement," there was "no proof of an across the board acceptance" and that "at least one of [the petitioner's] co-defendants had either explicitly or implicitly rejected the offer by attempting to bargain for a better offer." The court also noted that the decision to extend a plea offer lies solely within the discretion of the prosecutor and that this court had expressly approved of "all or nothing" offers like the one extended in this case. As to the petitioner's claim of ineffective assistance of counsel linked to Mr. Brown's actions, the court concluded that Mr. Brown did not "owe any duty" to the petitioner and was instead "charged with the ethical responsibility to zealously represent the interests of his client to the exclusion of all others."

In this appeal, the petitioner reiterates his claims that General Allen acted illegally, improperly, and unethically by withdrawing the plea offer based upon personal animus toward Mr. Brown and that Mr. Brown's actions during his discussion of the plea offer with General Allen amounted to a deprivation of the effective assistance of counsel. The State asserts that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-

conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner first asserts that the "all or nothing" plea offer made by General Allen "was illegal in this case" because it "create[d] an inherent conflict of interest." He asserts that the nature of the plea offer "created a situation in which each lawyer thus became a *de facto* agent of each co-defendant in addition to the defendant which that lawyer was representing *de jure*."

-7-

As this court has observed, "[w]hen there are multiple defendants, the district attorney general may make an offer of settlement contingent upon all of the defendants accepting the offer and pleading guilty." *Parham v. State*, 885 S.W.2d 375, 382 (Tenn. Crim. App. 1994). Indeed, this court has consistently approved of "all or nothing" or "package" deals like the one offered by General Allen in this case. *See, e.g., State v. Street*, 768 S.W.2d 703 (Tenn. Crim. App. 1988); *Hodges v. State*, 491 S.W.2d 624 (Tenn. Crim. App. 1972); *see also, e.g., State v. Joseph Lance Risner*, No. E2002-01112-CCA-R3-PC (Tenn. Crim. App., Knoxville, June 30, 2003); *Edward Dean Mullins v. State*, No. E2002-00730-CCA-R3-PC (Tenn. Crim. App., Knoxville, Feb. 24, 2003); *Crystal Rena Sturgill v. State*, No. E2002-00385-CCA-R3-PC (Tenn. Crim. App., Knoxville, Feb. 4, 2003); *Natasha W. Cornett v. State*, No. E2002-00034-CCA-R3-PC (Tenn. Crim. App., Knoxville, Sept. 30, 2002). Nothing about the facts of the present case distinguish it from any of the others in which similar plea offers have been made. Indeed, the petitioner's situation is akin to that in *Hodges*, wherein Hodges complained that his due process rights were violated when "an offer of punishment was made by the attorney general contingent on both pleading guilty, which offer collapsed when [Hodges' co-defendant] would not agree." *Hodges*, 491 S.W.2d at 628.

As to the petitioner's claim that General Allen "acted improperly" when withdrawing the plea agreement, we begin by noting that "there is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The decision to extend, or, conversely, withdraw a plea offer at any time prior to its acceptance by the trial court lies solely within the discretion of the prosecutor, and "[t]here is simply no authority for the proposition that a plea agreement can be enforced prior to acceptance by the court." *State v. Turner*, 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986) (citing *Metheny v. State*, 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979)); *see also Parham*, 885 S.W.2d at 382 (stating that "the district attorney general may withdraw or revoke the plea agreement" until it is accepted by the trial court). The evidence in this case indicates that General Allen extended a plea offer to the petitioner and his co-defendants expressly conditioned upon all three men accepting the offer. Mr. Brown, not satisfied with the terms of the offer extended to Mr. Webb, expressed his dissatisfaction with the offer and attempted to negotiate better terms. It was entirely reasonable for General Allen to interpret Mr. Brown's actions as a repudiation of the offer and to then withdraw it. Moreover, General Allen was entirely free to withdraw the offer even without the repudiation. Accordingly, the petitioner is not entitled to relief on this issue.

Finally, the petitioner has presented no authority in support of his contention that the nature of the plea offer operated to alter the obligations of the attorneys representing the petitioner and his co-defendants such that Mr. Brown's actions could be construed as a deprivation of the effective assistance of counsel for the

petitioner. As the post-conviction court observed, each attorney bore an obligation to represent his own client zealously and owed no duty to the other defendants. As this court has explained,

> [a] co-defendant's counsel has no obligation to protect the interests of the co-defendant. His duty and obligation is to his client alone. It is the client who has retained him or for whom he has been appointed to whom his duty of loyalty lies, free of compromising influences and loyalties. His obligation is to represent the interests and only the interests of his client. In a joint trial each defendant represented by separate counsel is thus protected.

*State v. Brown*, 644 S.W.2d 418, 421 (Tenn. Crim. App. 1982) (citation omitted). Mr. Brown was obligated to pursue the best plea offer he could on behalf of Mr. Webb, and he bore no duty to suggest to Mr. Webb that he take any offer due to any potential benefit to the petitioner or to Mr. Young. That Mr. Brown's actions deprived the petitioner of the opportunity to accept the State's offer does not alter our conclusion. *See Street*, 768 S.W.2d at 711.

Accordingly, we affirm the judgment of the post-conviction court.


_____
JAMES CURWOOD WITT, JR., JUDGE