IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2016 Session

## STATE OF TENNESSEE v. KRIS THEOTIS YOUNG

**Appeal from the Criminal Court for Knox County**
**No. 94647B    G. Scott Green, Judge**

_____

**No. E2015-01908-CCA-R3-CD – Filed September 20, 2016**

_____

The Defendant, Kris Theotis Young, was convicted by a Knox County Criminal Court jury of especially aggravated kidnapping, a Class A felony; aggravated robbery, a Class B felony; and aggravated burglary, a Class C felony. *See* T.C.A. §§ 39-13-305 (2014) (especially aggravated kidnapping), 39-13-402 (2014) (aggravated robbery), 39-14-403 (2014) (aggravated burglary). In a previous appeal, the supreme court affirmed the aggravated robbery conviction but remanded the case for sentencing on the especially aggravated kidnapping and aggravated burglary convictions that the trial court had dismissed. Thereafter, the trial court sentenced the Defendant as a Range I, standard offender to twenty-two years' confinement for especially aggravated kidnapping and six years' confinement for aggravated burglary, to be served concurrently with each other and with the twelve-year sentence imposed previously for the aggravated robbery conviction. On appeal, the Defendant contends that the trial court erred in sentencing him to twenty-two years for especially aggravated kidnapping. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Robert Kurtz, Knoxville, Tennessee, for the appellant, Kris Theotis Young.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme P. Allen, District Attorney General; Kevin J. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the robbery and kidnapping of the victim and to the burglary of the victim's home. On the afternoon of April 15, 2010, the Defendant and his codefendants, Larry Alston and Joshua Webb, confronted the victim outside of her Knoxville residence and demanded her purse at gunpoint before ordering her inside her home. *See State v. Larry Jereller Alston, Kris Theotis Young, and Joshua Edward Webb*, No. E2012-00431-CCA-R3-CD, 2013 WL 2382589, at *1 (Tenn. Crim. App. May 30, 2013), *appeal granted, cause remanded* (Jan. 17, 2014) (order).

As noted in this court's opinion in the previous appeal, the victim testified that she saw three men, one of whom was white and two of whom were black, walking toward her as she left home. As she approached her car, the "big" black man, later identified as the Defendant, asked if she knew a person. She said that she responded that she did not know the person and that the "next thing [she knew,] there were guns to [her] head." She said that the two black men pointed guns at her, and one of them demanded that she give him her purse and ordered her to "get to the house." She said that she was pushed onto her couch and that the men took her bank card and $140 from her wallet. She testified that the "big one" demanded that she give them her "bank number" so they could access her account. She stated that the "big one" took two flat screen televisions and walked toward the door before he saw the police outside. She said that after he saw the police, he went toward the kitchen, which allowed her to escape. She recalled that two men had pistols and that the other had a sawed-off shotgun. The victim's neighbor witnessed the incident and telephoned the police. Officers arrived a short time later, and the three men were apprehended as they attempted to flee. *Id.* at *1-2.

The jury convicted the Defendant of especially aggravated kidnapping, aggravated robbery, aggravated burglary, and possession of a firearm during a dangerous felony. *See State v. Alston*, 465 S.W.3d 555, 557 (Tenn. 2015). The trial court set aside the firearm possession verdict. It also set aside the verdicts for aggravated kidnapping and aggravated burglary on the basis that these convictions violated principles of due process when viewed in conjunction with the aggravated robbery conviction. *Id*. This Court reversed and reinstated the verdicts. *Id.* The Tennessee Supreme Court granted the Defendant's application for permission to appeal and remanded the case to this Court for reconsideration in light of *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013) (holding that the omission of a jury instruction pursuant to *State v. White*, 262 S.W.3d 559 (Tenn. 2012) qualified as constitutional error). *Alston*, 465 S.W.3d at 557. After reconsideration on remand, this Court reached the same result as it had previously. The Tennessee Supreme Court again accepted the defendant's application for permission to appeal and concluded the trial court erred by not requiring the *White* instruction relative to the especially aggravated kidnapping charge. *Alston*, 465 S.W.3d at 557. It found, however, that this error was harmless beyond a reasonable doubt and remanded to the trial court for

sentencing on the especially aggravated kidnapping and aggravated burglary charges. *Id.* at 566-67.

## First Sentencing Hearing

The record of the previous appeal, which is maintained by the clerk of this court, contains the transcript of the first sentencing hearing, which pertained to all three defendants. It likewise contains the presentence report, which reflects that the Defendant dropped out of high school in the tenth grade for unspecified disciplinary reasons but later obtained a GED. He attended a community college for approximately one semester before dropping out to care for his children. He reported mental health diagnoses of anger impulse issues, ADHD, and schizophrenia. He had received treatment at two mental health facilities. He had previously taken Abilify and Trazadone but reported he had not been allowed to continue taking them since he became incarcerated. The Defendant advised the author of the presentence report that he had grown up in foster care, that he had four children, and that he paid child support for three of the children from the disability benefits he received for his mental health issues. He reported employment with Arby's, McDonald's, and GC Services before he began receiving disability benefits. He had a pending driving while license suspended charge.

Neither the State nor any of the defendants offered the testimony of any witnesses as evidence. The victim gave an unsworn impact statement in which she said the offenses had caused her to be fearful and unable to sleep. She had moved her residence twice since the offenses. She said that she was under a doctor's care due to the effects of the offenses and that it had affected other family members. In an unsworn allocution, the Defendant apologized to the victim. He said he had been receiving help from his psychiatrist and had been "on disability." The codefendants also addressed the victim, apologizing and stating the crimes would not have occurred if they had not been addicted to pain medication.

## Sentencing Hearing on Remand

At the sentencing hearing held on remand for the Defendant and his two codefendants, the State summarily referred the court to the evidence from the previous sentencing hearing, which included the presentence reports.[1]

The victim gave an unsworn impact statement, informing the court that she still lived in fear and anxiety because of the incident. She stated that her life was a "living hell," that she could not forget the perpetrators' faces, that she relived the crimes daily,

---

[1] The judge who conducted the first sentencing hearing retired before the second sentencing hearing, and a successor judge conducted the second sentencing hearing. The successor judge indicated that he had read the presentence reports and the supreme court's opinion from the previous appeal.

that she lost her house due to her anxiety about being there after the offenses, that she had been scared for her life and had guns held to her head during the offenses, and that she had been pushed around by the perpetrators. She said she had not known the perpetrators before the offenses. She said she had been age sixty-five or sixty-six at the time of the offenses. She stated that the Defendant had been "mean" during the commission of the offenses and that she did not think she would have lived if a neighbor had not called the police during the offenses.

Codefendant Joshua Webb testified that the victim had not been targeted because of their having seen her on the street. He said that some friends bought pain pills from the victim the previous night and that she had been targeted on this basis. He acknowledged having a shotgun during the offenses.

Codefendant Larry Alston testified that before the crimes, someone came to "our" house and told "us" that the victim sold pills. Mr. Alston said that he and his codefendants knew of, but did not personally know, the victim when they committed the offenses. He said he had been to the victim's house previously but that she had not seen him because he sat in the car while others he had driven there bought pills. When asked if the victim was targeted because she was elderly, he said he had been unable to see her clearly when he was at her house previously and had never talked to her. He acknowledged that he and his codefendants agreed to rob her but denied they plotted to "accost" her. He agreed he had a loaded pistol when he committed the offenses.

Defense counsel noted that the presentence report revealed that the Defendant had no prior criminal convictions. Although the Defendant had a driving on a revoked license charge, it had been dismissed. Counsel argued that the trial court should not consider the Defendant's failure to appear conviction as prior criminal history because the conviction occurred after the jury returned the verdicts in the present case. The defense also offered evidence that the Defendant had obtained his GED and certificate from the HVAC program while in custody of the Tennessee Department of Correction. The defense asserted that the Defendant had learned a trade and skill that the Defendant could use to support himself and his family when he was released.[2] The defense also stated that the Defendant had been granted parole on his other sentence at the first parole hearing, which the defense alleged evidenced the Defendant's amenability to correction.

The Defendant addressed the court in allocution, in which he said he realized that what he had done had impacted the victim's life, and he apologized. He stated that despite how he had been characterized, he was not a "bad person." He noted that he had been age twenty when charged with the present offenses and that this had been his first

---

[2] Although the parole board had granted parole, the Defendant was not released due to the timing of the release of the appellate court's opinion, and he remained in prison based upon the outcome of the appeal.

-4-

criminal charge. He said that he had taken classes and learned a trade while incarcerated and that he planned to improve his life.

In reaching its decision relative to the Defendant, the trial court relied on five enhancement factors: (1) the Defendant's previous criminal record, (2) the Defendant's role as a leader in the commission of the offense, (4) the vulnerability of the victim, (9) the Defendant's use of a firearm during the commission of the offense, and (10) the Defendant's lack of hesitation when the risk to human life was high. *See* T.C.A. § 40-35-114 (2014). The court imposed Range I sentences of twenty-two years for especially aggravated kidnapping and six years for aggravated burglary, to be served concurrently with each other and with the twelve-year sentence imposed previously for the aggravated robbery conviction. This appeal followed.

The Defendant contends that the trial court erred by sentencing him to twenty-two years for his especially aggravated kidnapping conviction and argues that a sentence of fifteen years is appropriate. The State responds that the Defendant has failed to provide an adequate record for appellate review that would rebut the presumption that the court acted within its discretion. We conclude that the court did not abuse its discretion at sentencing.

As a preliminary matter, we acknowledge the State's argument that an appealing party must prepare an appellate record that sufficiently provides a complete account of the issues underlying the appeal. *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Specifically, this court has held that it must presume that a sentence was appropriate when the record did not contain either the presentence report or a transcript of the sentencing hearing. *State v. Beech*, 744 S.W.2d 585, 588 (Tenn. Crim. App. 1987).

The State is correct that the record of the present appeal does not contain the transcript of the first sentencing hearing and the presentence report. Throughout the sentencing hearing from which this appeal was taken, however, the court and the parties referred to the presentence report and the prior proceedings, including the trial and the sentencing hearing. We note that although a different judge presided at the first trial and the first sentencing hearing, the judge at the second sentencing hearing indicated his familiarity with the record of the previous proceedings. The transcript of the trial, the transcript of the first sentencing hearing, and the presentence report are included in the record of the previous appellate proceedings that is on file with the clerk of this court. We reject the State's contention that we must presume, due to an inadequate record, that the sentence imposed was appropriate, and we will review the question on its merits.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must

consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

For especially aggravated robbery, the Defendant, as a Range I offender, faced a sentence of fifteen to twenty-five years. *See* T.C.A. §§ 39-13-403(b), 40-35-112(a)(1).

The Defendant argues that the trial court erred in enhancing his sentence based upon his prior criminal history because his prior failure to appear conviction was a minor offense and was unrelated to the present case. *See* T.C.A. § 40-35-114(1) (2014). Contrary to the Defendant's assertion that the prior conviction was unrelated, the record reflects that it pertained to the Defendant's having fled the courthouse and the state during the trial in the present case. The record likewise reflects that contrary to the Defendant's characterization of the offense as "minor," he had to be extradited from another state. The court stated that it did not weigh this factor heavily. The Defendant has not shown that the court erred in finding that this factor existed.

The Defendant also argues that no proof existed to support the trial court's enhancement based upon the Defendant's having been a leader in the commission of the offense. *See id.* § 40-35-114(2). The trial record reflects that the "big one," whom the proof established was the Defendant, was the first perpetrator to display a gun to the victim, that he put the gun to her head, that he demanded her handbag, that he told her to go inside her house, that he held her at gunpoint while the other perpetrators searched the house, and that he demanded the "bank number" to her debit card. The court's finding that this factor existed is supported by the record.

The Defendant argues, as well, that the trial court erred in applying enhancement factor (4), based upon the victim's particular vulnerability due to age or physical or mental condition. *See id.* § 40-35-114(4). He argues that the court erred in relying on her age and her physical limitations at the time of sentencing. The court noted that the victim was in her mid-sixties at the time of the offenses, that she was "of not very large stature," and that she "walked with a limp" in court. The record reflects that the victim perceived the Defendant as the "big one," and the presentence report notes that the Defendant was 5'11" and weighed 220 pounds. The record supports the court's finding that this factor applied.

The Defendant argues that the trial court erred in applying enhancement factor (9), relative to the Defendant's use of a firearm. *See id*. § 40-35-114(9). He argues that State's reliance on the use of a firearm as an element of especially aggravated kidnapping and of aggravated assault renders improper the use of the enhancement factor relative to the convictions generally. The record reflects that the court limited its application of this factor to the aggravated burglary conviction. *See State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997) (holding that nothing prohibits the use of an enhancement factor for one offense which contains the elements of another offense). The court stated that it weighed this factor heavily and that it did not believe that the Defendant understood the severity of what could have happened due to the Defendant's possession of a firearm, as well as the presence of multiple firearms. The record supports the court's factual determination that this factor existed, and because the court limited its application of the factor to the aggravated burglary conviction for which use of a firearm was not an element, the court did not err.

The Defendant argues that the trial court erred by enhancing the especially aggravated kidnapping sentence with the factor for lack of hesitation to commit the offense when the risk to human life was high based solely upon the evidence that the Defendant possessed a deadly weapon during the offense. *See id.* § 40-35-114(10). The court noted that each of the Defendants had a loaded firearm, and it weighed the factor heavily. This court has said that this factor is duplicative of an element of especially aggravated kidnapping accomplished with a deadly weapon. *State v. Kern*, 909 S.W.3d 5, 7 (Tenn. Crim. App. 1993). The State argues, however, that the factor may nevertheless be applied to an offense when the Defendant creates risk to life other than that of the victim. *See State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). The State argues that the court did not err in applying this factor because it focused on the potential for unintended harm and the officers who responded to the scene when the defendants were still present. The record reflects, however, that the trial court focused solely on the fact that each defendant possessed a firearm in applying this factor. The court erred in this regard.

The Defendant argues that the trial court erred in failing to consider as mitigating factors the Defendant's post-offense efforts at rehabilitation as shown by his obtaining his GED and HVAC certification while in custody, his young age, his expressions of remorse to the victim, and his favorable institutional record as evidenced by his having been granted parole on the original sentence while the case was pending on appeal. Although the court acknowledged that the Defendant had made efforts to improve himself in preparation for his eventual release, none of the mitigating evidence commended to the court for consideration warranted any reduction in the appropriate sentences for the offenses. Thus, the record reflects that the court considered the mitigating factors offered by the Defendant but declined to give them any weight. As our supreme court has noted, the minimum sentences and the enhancement and mitigating factors specified by the Sentencing Act are advisory only. *Bise*, 380 S.W.3d at 704. The trial court did not err in its findings regarding the mitigating factors.

Despite the trial court's misapplication of enhancement factor (10) relative to the lack of hesitation to commit the offense when the risk to human life was high, the record does not reflect that the court wholly departed from the Sentencing Act, and the court articulated other reasons consistent with the Act to support the sentence imposed. *See Bise*, 380 S.W.3d at 706. We conclude that the trial court did not err in imposing a twenty-two-year sentence for the especially aggravated robbery conviction.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE