IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2019

## STATE OF TENNESSEE v. ANTWON YOUNG

**Appeal from the Criminal Court for Shelby County**
No. 15-05135      Paula L. Skahan, Judge
_____

### No. W2019-00492-CCA-R3-CD
_____

A Shelby County jury convicted the defendant, Antwon Young, of aggravated robbery and especially aggravated kidnapping, for which he received an effective sentence of thirty years.  On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions and asserts the State made two improper statements during closing argument.  After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Iclem S. Jaber, Memphis, Tennessee, for the appellant, Antwon Young.

Herbert H. Slatery III, Attorney General and Reporter; Ronald C. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

A Shelby County grand jury charged the defendant, along with co-defendants Marterius O'Neal and Melvin Wiggins, with one count each of especially aggravated kidnapping and aggravated robbery.  In a joint trial of the defendant and co-defendant O'Neal, the parties presented the following evidence:[1]  On the evening of October 11,

---

[1] Melvin Wiggins was tried separately from the defendant and co-defendant O'Neal.  *See State v. Melvin Wiggins*, W2018-01675-CCA-R3-CD, __ WL __ (Tenn. Crim. App. Oct. 30, 2019).

2014, the victim delivered Domino's pizzas to the defendant and co-defendant O'Neal. The victim parked in the driveway, approached the two men who were waiting on the porch, and handed co-defendant O'Neal the receipt. Co-defendant O'Neal complained the pizzas were too expensive and refused to pay for them, so the victim returned to his car with the pizzas and backed out of the driveway. Before the victim could drive away, the defendant signaled for him to come back. When the victim pulled back into the driveway, the defendant opened the passenger side door and said he would pay for the pizzas. The victim became suspicious when the defendant took "too long to actually fiddle with his money." The victim turned to look at co-defendant O'Neal and noticed him "clutching something" in his pants. When the victim looked back at the defendant, he was pointing a handgun at the victim. Co-defendant O'Neal then approached the car, opened the driver's door, and pointed his handgun at the victim. The victim testified he was "very scared" at this point. While holding the victim at gunpoint, the defendants robbed the victim of his wallet and the pizzas.

Co-defendant O'Neal then removed the car keys from the ignition and ordered the victim out of the vehicle and into the trunk. The victim complied, and the defendants locked the victim in the trunk. The victim attempted to call for help, but quickly hung up when he realized his cell phone had connected to the vehicle's wireless Bluetooth receiver. This alerted the victim to the fact that the defendant and/or co-defendant O'Neal had entered the vehicle and started the ignition. After disconnecting his phone from Bluetooth, the victim called his boss and asked his boss to call 9-1-1.

During the phone call, the victim noticed his car was moving. After several moments, the vehicle stopped, and the victim used a release in his trunk to fold down his backseats and entered the vehicle's interior. Upon realizing the defendants had left, the victim exited the vehicle. As the victim attempted to determine where the defendants had gone, he encountered a group of individuals who told him that the defendant and co-defendant O'Neal drove away in a gold Chevrolet Monte Carlo. They also provided the victim with the Monte Carlo's license plate number. The victim returned to his car and drove back to Domino's where he spoke with Officer Norman White of the Memphis Police Department. The victim informed Officer White he had been robbed at gunpoint by two African American males between the ages of 17 and 20. The victim also provided Officer White with the license plate number of the Monte Carlo.

Detective Jesus Parea, who led the investigation, discovered the license plate number provided by the victim was registered to co-defendant Melvin Wiggins. Detective Parea interviewed co-defendant Wiggins, who implicated co-defendant O'Neal in the robbery. Co-defendant Wiggins informed Detective Parea that co-defendant O'Neal and another person had borrowed his car the day of the robbery. Detective Parea then created two photographic lineups, one including a photograph of co-defendant O'Neal and one

with a photograph of co-defendant Wiggins, for the victim's review. According to Detective Parea, the victim immediately identified co-defendant O'Neal but did not identify co-defendant Wiggins. Co-defendant O'Neal was arrested as a result and interviewed by Detective Parea.

During the interview, Detective Parea told co-defendant O'Neal that co-defendant Wiggins had implicated him in the robbery and that the victim had identified him in a photographic lineup. After being properly advised of his *Miranda*[2] rights, co-defendant O'Neal provided a written statement in which he confessed to the robbery and implicated co-defendant Wiggins as the other perpetrator. Co-defendant O'Neal also identified a photograph of co-defendant Wiggins and wrote on the photograph, "[t]his is Melvin [Wiggins] the guy who started the pizza robbery. This is my cousin's (Shalanda Scott's) baby's father." Detective Parea later discovered that the defendant and co-defendant O'Neal were also cousins. While Detective Parea did not immediately develop co-defendant Wiggins as a suspect due to the victim's inability to identify him from a photographic lineup, he later determined co-defendant Wiggins had participated as the get-away driver of the Monte Carlo. Co-defendant Wiggins was, therefore, charged as well.

Detective Parea eventually developed the defendant as a suspect. On March 27, 2015, the victim met with Detective Parea and identified the defendant in a photographic lineup as the other perpetrator in the robbery. On cross-examination, Detective Parea was questioned about the fact that co-defendant O'Neal identified co-defendant Wiggins and did not identify the defendant. Detective Parea explained that suspects often conceal knowledge of a family member's involvement in a crime to protect them. He also testified that suspects sometimes lie to implicate someone who had previously implicated them in a crime.

At trial, the victim made an in-court identification of the defendant and co-defendant O'Neal. On cross-examination, the victim was questioned about the preliminary hearing where he only identified co-defendant O'Neal in the courtroom, despite the defendant's also being present. The victim explained he thought he identified the defendant at the preliminary hearing, but acknowledged after reviewing the preliminary hearing transcript that he did not. On re-direct, the victim stated he remembered the defendant was present at the preliminary hearing and explained the courtroom was crowded that day, and that while he was trying to make an identification of the defendant, the attorney questioning him switched to a different line of questioning before he could do so.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Co-defendant Wiggins admitted he was an accomplice in the robbery and had already been tried and convicted for his role as the get-away driver. However, he denied possessing a gun or stealing anything during the robbery and insisted co-defendant O'Neal lied when he implicated co-defendant Wiggins as the other gunman.

The State rested its case, and the defendant requested a motion for a judgment of acquittal. After hearing arguments, the trial court denied the motion. After hearing all of the testimony and weighing the evidence, the jury found the defendant guilty of aggravated robbery, a Class B felony, and especially aggravated kidnapping, a Class A felony. The trial court imposed within-range sentences of fifteen and thirty years, respectively, and ordered the sentences to be served concurrently with each other, for an effective sentence of thirty years. The defendant filed a timely motion for new trial in which he argued the evidence was insufficient to support his convictions. The trial court denied the motion, and this timely appeal followed.

*Analysis*

I.      **Sufficiency**

On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions for aggravated robbery and especially aggravated kidnapping. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be

given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

### A. Aggravated Robbery

The defendant argues the evidence was insufficient to support his conviction for aggravated robbery. Although the defendant does not dispute a robbery occurred, he argues the State failed to establish his identity as a perpetrator of the robbery. Specifically, the defendant points to co-defendant O'Neal's confession wherein co-defendant O'Neal implicated co-defendant Wiggins, not the defendant, as the other perpetrator in the robbery. In addition, the defendant notes the victim was unable to identify him during the preliminary hearing. The State contends the evidence was sufficient and any issues pertaining to witness credibility were resolved by the jury when it issued a guilty verdict. We agree with the State.

"The identity of the perpetrator is an essential element of any crime*." State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The burden is on the State to prove the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). The identification of the defendant as the perpetrator is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005)).

As charged in the indictment, "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). An aggravated robbery is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1).

At trial, the evidence showed that the defendant and co-defendant O'Neal, who were both armed with handguns, stole pizzas from the victim as well as the victim's wallet and car keys. The victim identified the defendant from a photographic lineup and identified the defendant at trial. Despite those identifications, the defendant points to the fact that the victim was unable to identify him during the preliminary hearing. However,

the victim stated he remembered the defendant being present at the preliminary hearing, but he was unable to locate and identify the defendant in the crowded courtroom before the attorney who was questioning him switched to a different line of questioning. The defendant also points to co-defendant O'Neal's statement to Detective Parea, wherein co-defendant O'Neal implicated himself and co-defendant Wiggins, not the defendant, as the perpetrators of the robbery. However, reconciliation of conflicts in the evidence are entrusted to the trier of fact, and, based on the verdicts, the jury reconciled the evidence in favor of the State. And, this Court will not substitute its judgment for the decision of the trier of fact. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Accordingly, sufficient evidence exists to show the defendant committed the aggravated robbery of the victim while employing a firearm. The defendant is not entitled to relief.

### B. Especially Aggravated Kidnapping

The defendant also argues the evidence was insufficient to support his conviction for especially aggravated kidnapping. As relevant here, especially aggravated kidnapping occurs when one "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty" through the use of a deadly weapon. Tenn. Code Ann. §§ 39-13-302(a); -305(a)(1). Whether the removal or confinement constituted substantial interference with the victim's liberty is a question of fact for the jury to resolve. *State v. White*, 362 S.W.3d 559, 577 (Tenn. 2012).

The evidence in this case, when viewed in the light most favorable to the State, was sufficient for the jury to find the defendant guilty of especially aggravated kidnapping. The defendant and co-defendant O'Neal both possessed handguns when, after robbing the victim, they ordered the victim out of his car and into the trunk. Once the victim complied, the defendants locked the trunk and drove the car to the back of the driveway of an abandoned house. While the victim's confinement in the trunk may have lasted only a matter of moments, the statutory elements of especially aggravated kidnapping do not require a finding that the defendant moved the victim any specific distance or restrained him for any particular length of time in order for the defendant's actions to substantially interfere with the victim's liberty. *See State v. Turner*, 41 S.W.3d 663, 670 (Tenn. Crim. App. 2000). The facts are sufficient to prove beyond a reasonable doubt that the defendant knowingly confined the victim in the trunk of his car through the use of a handgun. Thus, the defendant is not entitled to relief.

The defendant, relying on *White*, argues the victim's confinement was merely incidental to the robbery because being locked in the trunk did not increase the victim's risk of harm as the vehicle was only driven for a few seconds and "all cars sold in the United States are required to have latches which open trunks from the inside." In *White*, our Supreme Court determined that when a defendant is charged with kidnapping and

with an accompanying felony, the removal or confinement must have "criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape," in order to sustain the conviction for especially aggravated kidnapping. *White*, 362 S.W.3d at 577. If the confinement or removal associated with a kidnapping-related charge is merely incidental to accomplishing another felony, the defendant cannot be convicted of especially aggravated kidnapping in addition to the underlying felony. *State v. Alston*, 465 S.W.3d 555, 562 (Tenn. 2015). In determining whether there is "substantial interference," our Supreme Court provided several factors to consider, including, but not limited to: "whether the interference with the victim's liberty was inherent in the nature of the separate offense;" "whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;" "whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective;" and "whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." *White*, 362 S.W.3d at 580-81.

In this case, the defendant does not dispute that the trial court properly instructed the jury as required by *White*. Accordingly, because the jury was properly instructed and determined the victim's confinement was not essentially incidental to the accompanying felony, this Court reviews the defendant's claim under the sufficiency of the evidence standard. *Id*. at 562.

Here, the confinement of the victim occurred after the aggravated robbery was completed and was not necessary to accomplish the aggravated robbery. Thus, a jury could have reasonably concluded that the defendant and co-defendant O'Neal forced the victim into the trunk in an attempt to reduce their risk of detection and enable their escape, to prevent the victim from summoning assistance, or for some other reason not incidental to the aggravated robbery. *Id.*; *see State v. Mario Pendergrass*, M1999-02532-CCA-R3-CD, 2002 WL 517133, at *8 (Tenn. Crim. App. April 5, 2002) ("After the robbery, [the defendant's accomplice] and the defendant forced the victim into the trunk of his vehicle, thereby lessening their risk of detection and increasing the victim's risk of harm."), *perm. app. denied* (Tenn. Oct. 7, 2002); *State v. Aaron A. Winters*, No. 02C01-9802-CR-00053, 1999 WL 628968, at *6 (Tenn. Crim. App. Aug. 19, 1999) ("[T]he act of forcing [the victim] into the house effectively prevented the victim from summoning help, lessened [the defendant]'s risk of detection, and increased the risk of harm to the victim."), *perm. app. denied* (Tenn. March 6, 2000). While the defendant emphasizes that the victim was able to escape the trunk and seek help fairly quickly, *White* does not require the defendant to be successful in his attempt to prevent the victim from summoning assistance. 362 S.W.3d at 581. Accordingly, the evidence was sufficient to

establish that the victim's confinement had criminal significance beyond that necessary to accomplish the aggravated robbery.

## II.   Closing Argument

Finally, the defendant claims portions of the State's closing argument were improper. The defendant first challenges the following statement made by the State during its rebuttal argument:

> And goodness only knows what the purpose of taking those keys was. Rather (sic) that purpose was to take that car as well and that Bluetooth saved it or not. That's the people that they want off the street. The people who have no problem not only shoving a gun in this man's face, but forcing him into the trunk of his car so that [they] can get away with their pizza and the money and whatever else they would have done had that Bluetooth not gone off.

The defendant argues the statement constituted arguing facts not in evidence because it "implie[d] that the Bluetooth going off in [the victim]'s car while he was in the trunk had an effect as to the drivers' intentions with the car when in fact, there was no evidence that the Bluetooth activation had any effect." The State asserts the defendant has waived this challenge by raising it for the first time on appeal. We agree with the State.

The defendant did not contemporaneously object to the statement made in rebuttal, nor did he raise this challenge in his motion for new trial. Therefore, this issue is waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Notwithstanding waiver, the defendant has failed to demonstrate how the trial court erred by allowing the prosecutor's statement. Prior to closing arguments, the trial court instructed the jury that "[s]tatements, arguments and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements were made that you believe are not supported by the evidence you should disregard them." This Court presumes the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001)). The defendant is not entitled to relief on this issue.

The defendant also alleges the trial court erred by allowing the State to reference the defendant's exercise of his Fifth Amendment privilege. During the defendant's

closing argument, defense counsel twice stated that the defendant did not confess to the robbery. After a bench conference, the trial court gave the State permission to argue in rebuttal that, although the defendant did not confess to the robbery, he also did not speak to the police to deny his involvement. The defendant argues the trial court erred in granting the State permission to make such an argument, claiming it violated the defendant's Fifth Amendment privilege. Our review of the record, however, reveals the State never made the challenged statement in rebuttal. Because the defendant complains of a statement that was never introduced into evidence or discussed in front of the jury, he is not entitled to relief. *See State v. Jonathan Harris*, No. W2004-00243-CCA-R3-CD, 2005 WL 1249042, at *4 (Tenn. Crim. App. May 23, 2005), (finding no error to review on appeal when the evidence being challenged was never introduced at trial), *no perm. app. filed*.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE