IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 27, 2024 Session

## JAY WILLIAM EDWARDS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 120370   Hector Sanchez, Judge**

_____

### No. E2023-00410-CCA-R3-PC

_____

The Petitioner, Jay William Edwards, appeals from the denial of his petition seeking post-conviction relief from his convictions of aggravated kidnapping, assault, and interfering with an emergency call, for which he received an effective sentence of ten years' confinement.  On appeal, he argues: (1) trial counsels were ineffective in failing to object to (a) a constructive amendment to the indictment and (b) an incomplete White instruction;[1] and (2) he was deprived of his right to testify at trial.[2]  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Tyler M. Caviness, Knoxville, Tennessee, for the appellant, Jay William Edwards.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On the night of September 14, 2017, the Petitioner held his wife captive in their home and struck her repeatedly, threatened her with a gun, and attempted to prevent her from contacting the police.  State v. Edwards, No. E2019-02176-CCA-R3-CD, 2021 WL 2554217, *1-10 (Tenn. Crim. App. June 22, 2021), perm. app. denied (Tenn. Nov. 17,

---

[1] State v. White, 362 S.W.3d 559 (Tenn. 2012).
[2] We have reordered the Petitioner's issues for clarity.

2021). His wife suffered a cracked rib and extensive bruising to her face and body. The Petitioner was charged with especially aggravated kidnapping in Counts 1 and 2, aggravated kidnapping in Count 3, aggravated assault in Counts 4, 5, and 6, interfering with an emergency call in Count 7, and domestic assault in Count 8. At trial, a Knox County jury convicted the Petitioner of the lesser included offense of aggravated kidnapping in Counts 1 and 2, aggravated kidnapping in Count 3, the lesser included offense of assault in Counts 4, 5, and 6, interfering with an emergency call in Count 7, and domestic assault in Count 8. The trial court merged Counts 1, 2, and 3 into a single aggravated kidnapping conviction.

The Petitioner filed a direct appeal complaining of several alleged errors, including constructive amendments to the indictment and an incomplete White instruction. Id. at *14-18. Because the Petitioner failed to object to the jury instructions or raise those issues in his motion for new trial, this court reviewed for plain error and determined that the Petitioner was not entitled to relief. Id. The Petitioner did not allege that he was deprived of his right to testify at trial. This court affirmed the Petitioner's convictions but remanded for entry of corrected judgments reflecting the merger of the convictions in Counts 4, 5, 6, and 8 into a single assault conviction. Id. at *1.

The Petitioner filed a petition for post-conviction relief, which was amended after he was appointed counsel. As relevant to this appeal, the amended petition alleged that he was deprived of his right to the effective assistance of counsel because trial counsels denied him the opportunity to testify at trial and "ineffectively handled issues involving the constructive amendment to the indictment and [the] deficiency of the White instruction given to the jury."

**Post-Conviction Hearing**. The post-conviction court held an evidentiary hearing on February 10, 2023. At the hearing, the Petitioner's trial counsels, referred to as first counsel and second counsel, and the Petitioner testified. The trial court record was admitted and showed that during the Momon hearing, the Petitioner did not announce whether he was waiving his right to testify.[3] At the end of the second day of trial, the trial court directed trial counsels to address the requirements of Momon and the following exchange occurred:

[First Counsel:] . . . [W]e've had many discussions in this case about whether you will testify or not in this case, have we not?

[Petitioner:] Yes, we have.

---

[3] Momon v. State, 18 S.W.3d 152 (Tenn. 1999).

- 2 -

| | |
|---|---|
| [First Counsel:] | Okay. And you understand the pros and cons of doing both of those things? |
| [Petitioner:] | Correct. |
| [First Counsel:] | You've been fully advised of what could happen if you testify and what could happen if you don't testify by your attorneys, haven't you? |
| [Petitioner:] | Correct. |
| [First Counsel:] | Okay. And you understand that is your [c]onstitutional right not to testify if you don't want to testify? |
| [Petitioner:] | Yes, I do. |
| [First Counsel:] | Okay. And you also understand that it is your sole discretion. Your attorneys cannot force you to testify. The DAs cannot force you to testify. It's in your sole discretion to decide whether you're going to or not? |
| [Petitioner:] | Correct. |
| [First counsel:] | Okay. Does he need to make that decision now, Your Honor? |
| [Trial Court:] | No. |
| [First Counsel:] | Okay. Is that satisfactory questioning, Your Honor? |
| [Trial Court:] | Would you explain the jury instruction I'll give if he doesn't? |
| [First Counsel:] | Okay. Excellent point, Your Honor. . . . And Your Honor – the Judge touched on it just a second ago, that – and we touched on it in voir dire, when I was talking to them – that if you decide not to testify, the Judge will instruct them that there is to be no negative inference drawn by your decision not to testify. And you're aware of that? |

[Petitioner:]          Yes, I am.

The court adjourned for the day. The following morning, the parties did not resume the hearing and first counsel announced that the defense would not be putting on any proof.

Second counsel testified that the Petitioner's trial was his first trial as a licensed attorney. He graduated law school approximately one year before the trial and was working as an associate for first counsel. Approximately fifteen percent of first counsel's cases were criminal. The Petitioner initially hired first counsel to represent him in a family law matter, but later hired him in this criminal case. Second counsel handled the majority of the research, writing, and discovery review in this case. He prepared a trial notebook containing questions for each witness, anticipated testimony, and exhibits, and reviewed it with first counsel. Because the proof of the misdemeanor charges was strong, their strategy was to focus on the lack of direct evidence to support the felony charges.

Second counsel recalled meeting with the Petitioner at least three times to prepare his testimony. Trial counsels' billing records were admitted and showed two testimony preparation meetings lasting more than two hours, though second counsel said he "underbilled [the Petitioner] quite a bit." He and the Petitioner practiced both direct and cross-examination questions. He explained to the Petitioner on multiple occasions that whether to testify was his decision alone. He could not recall the Petitioner ever saying whether he was going to testify. Though he included the Petitioner on the witness list, that did not necessarily mean the Petitioner was planning to testify. Based on their discussions, second counsel believed the Petitioner would have testified that the victim had broken her own rib, which "would [have been] pretty detrimental in the eyes of the jury." He could not recall specifically asking the Petitioner during trial if he wanted to testify, but doing so was "sort of just an automatic thing to [him]." He recalled having a Momon hearing but did not recall that the Petitioner did not announce whether he would testify.

When asked about the jury instructions, second counsel said his focus was ensuring they included the federal definition of beyond a reasonable doubt and the White instruction. The White instruction was included, just not for every count. During closing arguments, they highlighted the portion of the White instruction that was relevant to the jury's deliberation. He did not think he and first counsel ever discussed whether there was a constructive amendment to the indictment, and there was no tactical decision made not to object.

On cross-examination, second counsel acknowledged that if the Petitioner testified at trial, there were unfavorable facts that could have been introduced on cross-examination, including facts from the Petitioner's three prior divorce proceedings. When asked whether he, first counsel, or their intern decided that the Petitioner would not testify, he responded,

- 4 -

"Absolutely not." He agreed that in past legal proceedings, the Petitioner was not "timid or reserved in asserting [his] rights." After the trial, the Petitioner never questioned why he did not testify. Second counsel first learned that the Petitioner believed he was prevented from testifying when he filed his amended petition for post-conviction relief.

First counsel testified that he began practicing law in 2007 and at the time of the trial, about seventy to eighty percent of his practice was criminal defense. The Petitioner's trial was his fourth or fifth criminal trial. The Petitioner hired first counsel to represent him in his divorce proceedings, and later hired him in this criminal case. First counsel focused primarily on the divorce and related proceedings. Second counsel did most of the "leg work" in this case, including discovery review and pretrial preparations. Their internal strategy was to seek acquittals on the greater offenses.

First counsel did not recall any conversations with the Petitioner about whether he would testify at trial but said they must have occurred. He did not remember whether the Petitioner expressed a desire to testify. At the divorce proceeding, the Petitioner invoked his Fifth Amendment privilege and did not testify about the facts underlying this case. First counsel recalled having a <u>Momon</u> hearing but did not recall whether the Petitioner articulated a desire to testify during it. At the end of the second day of trial, he assumed the Petitioner was not going to testify but did not recall why he assumed so. He did not recall any conversations with the Petitioner the next morning about testifying.

First counsel said he reviewed the indictment and did not notice any legal issues. Reviewing the jury instructions would have been second counsel's responsibility. If there was an issue with the jury instruction, they did not make a tactical decision not to object.

On cross-examination, first counsel said he "was not worried about [the Petitioner] testifying" and "thought it would have been fine." His default was to have his clients testify, and he did not recall ever advising the Petitioner that he should not testify. He did not make the decision that the Petitioner was not going to testify. First counsel did not see the Petitioner after trial and did not learn that he believed he was deprived of his right to testify until he filed the amended petition for post-conviction relief. When asked if there was any tactical decision to "[shy] away" from objections, he said the trial court "made some sort of ruling or comment that made [them] realize it might be best to back off some of the jumping up and down [they] would typically do[.]" On redirect examination, he clarified that they would have made any objections that would "fundamentally affect the outcome."

The Petitioner testified that he earned a Ph.D. in leadership and was formerly an associate professor at Lincoln Memorial University. At the time of the offense, he and the victim had been married for three years and had a three-month-old son. The Petitioner

began detailing the day of the offense and the State objected to its relevance. Post-conviction counsel argued that he needed to present the testimony the jury would have heard but for the deprivation of his right to testify or his right to the effective assistance of counsel. Upon the State's suggestion, the post-conviction court agreed to limit the Petitioner's testimony to the "conversations around whether or not to testify, not the actual testimony" and determine later if additional testimony was necessary.

The Petitioner said he expressed a desire to testify as soon as he hired trial counsels. He remembered meeting with them at least twice to prepare his testimony. During those meetings, they asked him potential cross-examination questions to see how he would respond. He was "extremely adamant" about testifying and never wavered. He felt like whether to testify was his choice, and trial counsels did not try to pressure him in either direction. During the Momon hearing, he thought he was announcing his decision to testify when he responded, "Yes, I am" when the court asked him if he knew whether to testify was his decision. After that, however, the court indicated that he did not have to decide until the next day. That night, he told trial counsels he was ready to testify.

The morning of the third day of trial, he asked trial counsels when he was going to testify and they said, "Just be patient. Not now." He remembered first counsel announcing that they would not be putting on proof and beginning closing arguments. During closing arguments, he told second counsel that he wanted to testify and second counsel responded, "Just relax, just relax, not yet." He never had the opportunity to tell the court that he wanted to testify. If the court had asked whether he wanted to testify, he would have said "absolutely."

On cross-examination, the Petitioner acknowledged he had authored numerous articles including journal publications and held professorships in numerous countries. He drafted the original post-conviction petition, which included a twenty-nine page appendix. He used, in part, the work of the attorney that represented him on direct appeal. The allegation that he was deprived of his right to testify was not raised until his appointed counsel filed an amended petition. He also acknowledged that he wrote a twenty-four page letter to the governor in April 2020, describing his conviction as a "massive conspiracy and cover-up of various governmental entities in Knox county." Despite detailing the issues in his case, he did not mention a deprivation of his right to testify. He said, however, that there were "probably over a hundred" recorded conversations with his mother where he expressed his frustration about not being allowed to testify after the trial. He also complained to second counsel after trial that he did not get the opportunity to testify. He did not recall attempting to retain trial counsels for his direct appeal.

After hearing the above testimony, the post-conviction court filed a written order denying the petition. In the order, the court declined to address trial counsels' performance

related to the constructive amendment to the indictment and the White instruction because these grounds "[had] been specifically addressed in the Petitioner[']s direct appeal by the Tennessee Court of Criminal Appeals" and therefore "[had] been previously litigated." Regarding the Momon advisal, the court found that the Petitioner failed to establish that trial counsels were deficient or that the deficient performance prejudiced the defense. The court found that "the requirements of Momon were satisfied, albeit the last sentence in the third section [that the defendant has voluntarily and personally waived the right to testify]."

The court acknowledged that the record was silent as to the Petitioner's waiver of his right to testify but stated that it "[could not] find that [the Petitioner] did not voluntarily and personally waive his right to testify in discussions with his attorneys before they rested defense proof." The court found the Petitioner was not a credible witness, and his claim that he never spoke with trial counsels before the defense rested on the third day of trial was "unfathomable given the circumstances." The court found that though trial counsels could not articulate the content of their conversation with the Petitioner, they "would not have foregone that very important determination before resting defense proof." The court emphasized that the Petitioner did not mention "this very egregious allegation" at trial, at sentencing, in his motion for new trial, in his extensive letter to the governor, in any recorded jail calls, or in his original pro se petition. The court then determined that any deprivation of the Petitioner's right to testify was harmless. The court highlighted that though the Petitioner's testimony would have been important, the evidence was overwhelming and the victim's account was corroborated by her physical injuries and the communications between the victim and her family during the offense. The Petitioner filed a timely appeal.

After briefing and oral argument was complete, we remanded this case for the filing of an amended order. We notified the post-conviction court that its finding that the Petitioner's ineffective assistance of counsel claims related to the constructive amendment to the indictment and the White instruction had been previously litigated was erroneous and ordered that it address both issues. The post-conviction court filed an amended order. Regarding the White instruction, the court found that the Petitioner had not established deficiency or prejudice. Though the White instructions provided referenced only aggravated assault, the jury was instructed that assault was a lesser included offense of aggravated assault. Additionally, the Petitioner's claim that it was unclear if the instruction applied to the lesser included offenses of especially aggravated kidnapping was "without merit." Regarding the constructive amendment to the indictment, the court found that trial counsels' failure to object to the constructive amendment to the indictment was deficient but that the deficient performance did not prejudice the defense.

We granted the Petitioner's motion for supplemental briefing related to the issues addressed by the amended order. The issues are now properly before this court for review.

## ANALYSIS

**I. Ineffective Assistance of Counsel**. The Petitioner argues that trial counsels were ineffective in failing to object to (a) the constructive amendments in Counts 1, 2, and 3; and (b) the "incomplete and confusing" <u>White</u> instructions. The State argues that the Petitioner has waived these issues by failing to include a statement of the issues, statement of the case, or statement of facts in his supplemental brief. Tenn. R. App. P. 27(a)(4)-(6) ("[t]he brief of the appellant shall contain . . . [a] statement of the issues presented for review[,] [a] statement of the case[, and] [a] statement of facts"). Alternatively, the State argues that the Petitioner has not established that he received the ineffective assistance of counsel. We conclude that the issues have not been waived and determine that trial counsels were not ineffective.

The Petitioner has preserved his ineffective assistance of counsel claims. In support of its argument that Rule 27(a) applies to supplemental briefs, the State cites a footnote in <u>Lovlace v. Copley</u>. 418 S.W.3d 1, 36 n.24 (Tenn. 2013). In this footnote, the <u>Lovlace</u> court declined to address certain issues because they required credibility determinations, or, alternatively, because the appellants "failed to raise these issues in their [] application for permission to appeal, failed to list these issues in the appropriate section of their supplemental brief, and failed to provide any significant argument regarding these issues in the argument section of their briefs." <u>Id.</u> The State does not cite, and we have not found, any case in which a Tennessee court has directly stated that Rule 27(a) applies to supplemental briefs. Regardless, we exercise our discretion to review these issues despite the alleged inadequacies of the supplemental brief. The alleged inadequacies do not hinder our review because both parties extensively addressed these issues in their briefs. <u>See</u> <u>Hodge v. Craig</u>, 382 S.W.3d 325, 337 (Tenn. 2012) (exercising discretion to review an issue not contained in the statement of issues because the claim was repeatedly asserted in the argument section); <u>see also</u> Tenn. R. App. P. 2 ("For good cause, . . . the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case" subject to limited exceptions).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. <u>Mobley v. State</u>, 397 S.W.3d 70, 80 (Tenn. 2013) (citing <u>Calvert v. State</u>, 342 S.W.3d 477, 485 (Tenn. 2011)). In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. <u>Jaco v. State</u>, 120 S.W.3d 828, 830 (Tenn. 2003). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them. <u>Calvert</u>, 342 S.W.3d at 485 (citing <u>Grindstaff v. State</u>, 297 S.W.3d 208, 216 (Tenn. 2009); <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are

- 8 -

they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). However, we review the post-conviction court's conclusions of law de novo with no presumption of correctness. Mobley, 397 S.W.3d at 80.

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that: (1) his lawyer's performance was deficient; and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**A. Constructive Amendment**. "Because an accused in a criminal prosecution has a right to fair and reasonable notice of the charges against which he must defend, 'the accused may be convicted only of a crime [that] is raised by the indictment or [that] is a lesser included offense thereof.'" State v. Myers, 581 S.W.3d 173, 180 (Tenn. 2019) (quoting State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001)). A constructive amendment of

the indictment occurs "when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). A constructive amendment results in automatic reversal of the defendant's conviction because he may have been convicted on a ground not charged in the indictment. Id.

On direct appeal, the Petitioner challenged the alleged constructive amendments to the indictment. This court summarized the relevant counts of the indictment as follows:

> [T]he [Petitioner] was charged in Counts 1 and 2 of the indictment with alternative counts of especially aggravated kidnapping. Count 1 alleged especially aggravated kidnapping accomplished with a deadly weapon, see T.C.A. § 39-13-305(a)(1), while Count 2 charged especially aggravated kidnapping where the victim suffered serious bodily injury, see id. § 39-13-305(a)(4). Count 3 charged the offense of aggravated kidnapping "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." See id. § 39-13-304(a)(5). Count 3 was clearly a lesser included offense of Count 1 that need not, and arguably should not, have been pleaded as a separate count of the indictment. See id. § 40-18-110.

Edwards, 2021 WL 2554217, at *14. This charging of alternative modes and a lesser included offense in separate counts gave rise to confusing jury instructions. After defining the essential elements of especially aggravated kidnapping in Counts 1 and 2, the trial court instructed the jury that, should it find the defendant not guilty of especially aggravated kidnapping, it should proceed to consider the lesser included offense of aggravated kidnapping. Rather than defining the essential elements of aggravated kidnapping immediately, the trial court instructed that it would define the offense later in the instructions. This later definition appeared in the Count 3 instruction:

> The defendant is charged in Count 3 of the [i]ndictment with the offense of aggravated kidnapping. To this offense . . . he has entered a plea of not guilty.
>
> Any person who commits the offense of aggravated kidnapping is guilty of a crime.
>
> For you to find the defendant guilty of the offense as charged in Count 3, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant knowingly confined another unlawfully so as to interfere substantially with the other's liberty; and

- 10 -

(2) that the alleged victim suffered bodily injury.

For you to find the defendant guilty of the offense as charged in Count 3, the State must have proven beyond a reasonable doubt the existence of the following elements:

(1) that the defendant knowingly confined another unlawfully so as to interfere substantially with the other's liberty; and

(2) that the defendant possessed or threatened the use of a deadly weapon.

Id. at *14-15.  However, Count 3 of the indictment only alleged aggravated kidnapping with a deadly weapon.  This instruction, therefore, invited the jury to convict the Petitioner based on a mode not charged in the indictment.  Because trial counsels failed to raise the issue at trial or in the motion for new trial, this court was limited to reviewing for plain error.  Id. at *15.

Through the lens of plain error, this court concluded that the Petitioner was not entitled to relief.  Id. at *16-17.  Regarding Counts 1 and 2, this court highlighted that "[t]he better practice would have been for the trial court to define each lesser included offense immediately after the greater offense."  Id. at *16.  However, the Petitioner failed to establish that a clear and unequivocal rule of law was breached or that the error was so significant that it probably changed the outcome of the trial.  Regarding Count 3, this court concluded there was a constructive amendment:

Here, the State charged the defendant in Count 3 with aggravated kidnapping "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon."  By alleging a specific mode of liability, the State was obliged to prove that mode of liability and was precluded from achieving a conviction under a mode of liability different than that alleged in the indictment.  Because the trial court's instruction invited the jury to convict the defendant of aggravated kidnapping in Count 3 if it found that the victim suffered bodily injury, it permitted the jury to convict the defendant "on a ground not charged in the indictment," and, in consequence, resulted in a constructive amendment of the indictment.

Id. at *17 (citations omitted).  However, the Petitioner failed to establish that substantial justice was at stake because the error was not so significant that it probably changed the outcome of the trial.  "Unlike most of the constructive amendment cases addressed by this court, in this case the trial court did instruct the jury on the correct mode of liability charged

in the indictment, and the evidence was sufficient to support a finding of guilt for that mode of liability." Id.

We note that this court recently clarified the standard applicable to determining whether consideration of a constructive amendment is necessary to do substantial justice under plain error review. State v. Modine, No. M2022-01183-CCA-R3-CD, 2024 WL 3043270, at *4-5 (Tenn. Crim. App. June 18, 2024). The question is not whether the evidence is sufficient to support a conviction under the indicted mode, but whether we can conclude beyond a reasonable doubt that the jury's verdict was unanimous. Id. at *5 (though the evidence was sufficient to support a conviction under the indicted mode, "that is not the proper lens through which we review these issues"). In Modine, we granted plain error relief where, like here, the jury instruction charged two modes of liability—the mode charged in the indictment and an uncharged mode—because "it was possible, based on the jury instructions, that some jurors found that Defendant committed the rape by force or coercion, and others thought it was due to lack of consent." Id. This case, however, is factually distinct from Modine because despite the erroneous instruction in Count 3, the jury unanimously found in Count 1 that the Petitioner committed aggravated kidnapping with a deadly weapon based on the same sequence of events underlying Count 3.

Trial counsels were deficient in failing to object to the jury instructions in Count 3, but not in Counts 1 and 2. As this court concluded on direct appeal, only Count 3 of the indictment was constructively amended. Trial counsels testified that they made no tactical decision not to object to issues related to the indictment or the jury instructions. Accordingly, the failure to object to the constructive amendment fell below an objective standard of reasonableness.

Assessing prejudice requires clarification of the relationship between plain error prejudice and Strickland prejudice. The Petitioner argues that trial counsels' deficient performance was prejudicial because had they preserved the issue, this court would have reversed his conviction on direct appeal. The State argues that a petitioner who failed to establish on direct appeal that the error was so significant that it probably changed the outcome of the trial cannot establish prejudice under Strickland. See Falcon v. State, No. E2021-00398-CCA-R3-PC, 2022 WL 984665, at *5-6 (Tenn. Crim. App. Apr. 1, 2022), no perm. app. filed ("[O]ur finding on direct appeal that the conduct of the trial court did not result in prejudice to the Petitioner's case means that the Petitioner cannot meet the prejudice prong of his ineffective assistance of counsel claim with respect to this allegation."). In support of this argument, the State cites several unreported cases, all stemming from Mathis v. State, wherein this court held that the Strickland prejudice standard and the plain error prejudice standard are "essentially the same." No. M2006-02525-CCA-R3-PC, 2008 WL 1850800, at *10 (Tenn. Crim. App. Apr. 25, 2008), perm. app. denied (Tenn. Oct. 27, 2008). The Petitioner contends that these cases failed to

meaningfully address the issue and points to other jurisdictions that have determined that their plain error standard is distinct from Strickland prejudice. See, e.g., Ex parte Taylor, 10 So.3d 1075, 1078 (Ala. 2005); People v. Randolph, 917 N.W.2d 249, 253-56 (Mich. 2018).

We conclude that a denial of plain error relief on direct appeal based on a petitioner's failure to show that the error "was so significant that it probably changed the outcome of the trial" does not necessarily preclude a finding of prejudice under Strickland. The standards are similar, but not identical. A defendant is not entitled to plain error relief unless he can show that "substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial." State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010) (citing State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000)) (internal quotations omitted). Under Strickland, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Strickland requires a slightly lower showing of prejudice than plain error. In Harrington v. Richter, the United States Supreme Court explained that there is a difference between Strickland's prejudice standard and a more-probable-than-not standard. 562 U.S. 86, 111-12 (2011). Under Strickland, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case" to establish prejudice. Strickland, 466 U.S. at 693 (emphasis added). But under plain error, a defendant must show exactly that. Hatcher, 310 S.W.3d at 808. To be plain, an error must have "probably," or more likely than not, changed the outcome. See Kilpatrick v. Bryant, 868 S.W.2d 594, 603 (Tenn. 1993) (using "probably" and "more likely than not" interchangeably). Though this difference "is slight and matters 'only in the rarest case,'" it is possible for trial counsel's failure to object to an error to create a "reasonable probability" of a different outcome without the error being "so significant that it probably changed the outcome." Harrington, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 693). Therefore, we decline to adopt the broad rule proposed by the State.

Nonetheless, the Petitioner has failed to establish that trial counsels' deficient performance prejudiced his defense. Had trial counsels objected, there is no reasonable probability that the result of the trial would have been different. See Nesbit v. State, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting Strickland, 466 U.S. at 694) ("the question is whether there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt," or would have convicted of a lesser charge). The evidence of aggravated kidnapping, as summarized on direct appeal, was overwhelming. In addition, the jury unanimously found in Count 1 that the Petitioner committed aggravated kidnapping with a deadly weapon, and unanimously found in Count 2 that the Petitioner committed aggravated kidnapping where the victim suffered serious bodily

- 13 -

injury. Because Counts 1, 2, and 3 were all based on the same sequence of events (and thus merged after trial), this is strong evidence that there is no reasonable probability the outcome would have been different absent the error. Accordingly, the Petitioner is not entitled to relief.

**B. White Instruction**. In State v. White, the Tennessee Supreme Court held that the kidnapping statutes were not intended to apply to "a removal or confinement of a victim that is 'essentially incidental' to that of an accompanying felony, such as rape or robbery." 362 S.W.3d 559, 581 (Tenn. 2012). To ensure defendants are afforded constitutional due process, the trial court must therefore instruct the jury to determine whether the removal or confinement "is independently significant from [the] accompanying felony." Id. at 578. Though White uses the term "accompanying felony," the Tennessee Supreme Court has required a White instruction when the accompanying offense was misdemeanor assault. State v. Cecil, 409 S.W.3d 599, 609-13 (Tenn. 2013) (reversing the defendant's false imprisonment conviction because "the jury was not adequately charged on the question of whether the victim's removal or confinement . . . was essentially incidental to the assault"); see also State v. Alston, 465 S.W.3d 555, 562 (Tenn. 2015) ("We have also identified certain crimes—such as robbery, rape, and assault—that, when charged along with kidnapping, would warrant [a White] instruction.").

On direct appeal, the Petitioner challenged the alleged incomplete White instruction. Edwards, 2021 WL 2554217, at *18. The trial court provided the pattern jury instruction adopted pursuant to White for each kidnapping offense. At the end of each White instruction, regardless of the offense for which it correlated, was the following language: "[u]nless you find beyond a reasonable doubt that the alleged victim's confinement exceeded that which was necessary to accomplish the alleged [a]ggravated [a]ssault, you must find the defendant not guilty of especially aggravated kidnapping." (emphasis added). Again, trial counsels failed to raise any issue at trial or in the motion for new trial and this court was limited to reviewing for plain error. Id. Through the lens of plain error, this court concluded that "the trial court's failure to specifically enumerate the lesser included offense of assault in its White instruction did not breach a clear and unequivocal rule of law." Id.

The Petitioner argues that trial counsels were ineffective for failing to object to the White instruction provided at trial. He contends that because the instruction referenced only aggravated assault, the jury was never told that it had to find the confinement of the aggravated kidnapping was greater than necessary to accomplish assault—the convicted offense. He also contends that the instruction was confusing because it suggested it was only applicable to especially aggravated kidnapping. The State responds that trial counsels were not deficient because specific enumeration of lesser included offenses is not required.

- 14 -

The State also contends that the Petitioner was not prejudiced because the proof overwhelmingly showed confinement beyond what was necessary for the assault.

We conclude that trial counsels' failure to object to the <u>White</u> instruction was deficient. Though the instruction was provided, the confusing language could have led the jury to believe that it applied only to especially aggravated kidnapping, and only when the accompanying charge was aggravated assault. Trial counsels testified that they did not make a tactical decision not to object to the <u>White</u> instruction. The failure to object, therefore, fell below an objective standard of reasonableness.

However, the Petitioner has failed to establish that trial counsels' failure to object to the <u>White</u> instruction prejudiced his defense. The evidence overwhelmingly established that the aggravated kidnapping was independently significant from the assault. The confinement lasted for approximately twelve hours, during which he repeatedly attempted to prevent the victim from summoning assistance to avoid detection. Accordingly, he is not entitled to relief.

**II. <u>Momon</u>**. The Petitioner alleges that the post-conviction court erred by finding that he knowingly, voluntarily, and intelligently waived his right to testify at trial. He complains that, contrary to the Tennessee Supreme Court's instruction in <u>Momon</u>, the post-conviction court presumed waiver of a fundamental right from a silent record. 18 S.W.3d at 162. Because the post-conviction court did not permit him to present the testimony he would have given at trial, he asks this court to remand for determination of whether the deprivation of his right to testify was harmless beyond a reasonable doubt. The State responds that the Petitioner waived this issue by failing to raise it in his motion for new trial or on direct appeal. Alternatively, the State argues that any error in the <u>Momon</u> colloquy was harmless because the evidence was overwhelming, and the Petitioner's testimony would have contradicted the victim's corroborated account. We agree that the Petitioner waived his stand-alone <u>Momon</u> claim. Considering this issue as it relates to the Petitioner's ineffective assistance of counsel claim, we conclude that the Petitioner has not established that trial counsels' performance was deficient.

The Petitioner has waived his stand-alone <u>Momon</u> claim by raising it for the first time in this appeal. <u>See</u> <u>Mobley</u>, 397 S.W.3d at 104 (citing Tenn. Code Ann. § 40-30-106(g)) (holding that the petitioner waived his <u>Momon</u> claim by not presenting it to the trial court or on direct appeal). This claim was not raised at trial, in his motion for new trial, on direct appeal, or in the post-conviction court. Relying on <u>State v. Walsh</u>, the Petitioner argues that the State has waived its waiver argument by raising it for the first time on appeal. 166 S.W.3d 641, 645-46 (Tenn. 2005) (citing Tenn. Code Ann. § 40-30-110(f)) (concluding that because waiver is a rebuttable presumption, the State waived its waiver argument by not raising it in the post-conviction court). <u>Walsh</u>, however does not

support the Petitioner's argument. In the post-conviction court, the Petitioner presented this issue in the context of an ineffective assistance of counsel claim—not a stand-alone Momon claim. The State, therefore, argued waiver as soon as the issue was raised and has not waived its waiver argument. Because the State is correct that the stand-alone claim is waived, we will construe this issue as an ineffective assistance of counsel claim consistent with the post-conviction petition and the post-conviction court's ruling. See Thomas v. State, No. W2004-01704-CCA-R3-PC, 2005 WL 1669898, at *2-3 (Tenn. Crim. App. July 18, 2005) (addressing the petitioner's Momon claim only as it related to ineffective assistance of counsel because the stand-alone claim was waived), perm. app. denied (Tenn. Dec. 5, 2005).

The right to testify at one's own trial is a fundamental right that must be personally waived by the defendant. Momon, 18 S.W.3d at 161. Absent a written waiver, defense counsel must ensure the defendant has personally waived the right by requesting a hearing on the record prior to the conclusion of the proof and outside of the presence of the jury. Id. at 162, 175. During the Momon hearing, defense counsel must show that the defendant knows and understands:

> (1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

> (2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

> (3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

Id. "The waiver of a fundamental right will not be presumed from a silent record, and the courts should indulge every reasonable presumption against the waiver of a fundamental right." Id. (internal citations omitted). However, the failure to follow these procedural guidelines "will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163.

Though the trial court conducted a Momon hearing in this case, the Petitioner did not announce during the hearing whether he was waiving his right to testify. After the Petitioner confirmed that he knew and understood his rights, first counsel asked, "Does [the Petitioner] need to make that decision now, Your Honor?" The trial court stated he

- 16 -

did not, and the court adjourned for the day. The following morning, the parties did not resume the hearing and first counsel announced that the defense would not be putting on any proof. In his amended post-conviction petition, the Petitioner alleged that trial counsels did not consult with him before the announcement and instead made a "unilateral decision" that he would not testify.

We agree with the post-conviction court that the Petitioner has not established that trial counsel's performance was deficient. The Petitioner has failed to demonstrate by clear and convincing evidence his central factual allegation—that trial counsels unilaterally decided that he would not testify at trial. The only support for this allegation is the Petitioner's own testimony, which the post-conviction court specifically found not to be credible. The remaining evidence suggests that the Petitioner did in fact personally waive his right to testify. Second counsel testified that he explained to the Petitioner on multiple occasions that whether to testify was his decision alone. During the Momon hearing, the Petitioner confirmed he had discussed the decision with trial counsels many times and understood that the decision to testify was within his sole discretion. Trial counsels could not recall their specific conversations with the Petitioner, but both confirmed they did not make the decision that the Petitioner would not testify. Trial counsels also testified that the Petitioner never complained to them during or after trial about not testifying.

The Petitioner acknowledged that he did not mention the alleged deprivation of his right to testify in his original pro se petition for post-conviction relief or in a twenty-four page letter he wrote to the governor detailing the issues in his case which he believed amounted to a "massive conspiracy and cover-up of various governmental entities in Knox County." Though first counsel did not ask during the Momon hearing whether the Petitioner was voluntarily and personally waiving his right to testify, the evidence in the record establishes "that the right was otherwise personally waived" by the Petitioner and overcomes the presumption against waiver. Momon, 18 S.W.3d at 163.

Contrary to the Petitioner's assertion, this conclusion does not presume waiver of a fundamental right from a silent record. A silent record is one that is void of any evidence that the defendant personally waived his right to testify. See State v. Posey, 99 S.W.3d 141, 143, 149 (Tenn. Crim. App. 2002); see also Thomas, 2005 WL 1669898, at *3-4 (concluding the record was not silent because counsel testified that the petitioner made an informed decision not to testify). As summarized above, the record in this case contains evidence of personal waiver—most notably, trial counsels' testimony that they did not make a unilateral decision that the Petitioner would not testify. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

- 17 -

After review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE